Michael J. Frevola
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY  10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
FRONT CARRIERS LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRONT CARRIERS LTD.,<br><br>              Plaintiff,<br><br>      -against-<br><br>TRANSFIELD ER CAPE LTD.,<br><br>            Defendant. | 07 Civ. 6333 (KMK) |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE MARITIME ATTACHMENT

## TABLE OF CONTENTS

PAGE

**TABLE OF AUTHORITIES**………………………………………………………………ii

**PRELIMINARY STATEMENT** …………………………………..………………………1

**STATEMENT OF FACTS** ..…………………………………………………………………1

**ARGUMENT** …………………………………………………………………………….4

**POINT I**

**FRONT CARRIERS' COMMENCEMENT OF THIS ATTACHMENT
PROCEEDING BEFORE DEMANDING ARBITRATION CLEARLY
IS PERMITTED UNDER GOVERNING LAW**………………………………………5

    **A.**    **The United States Code Authorizes Front Carriers' Method
of Proceeding**……………………………………………………………..5

    **B.**    **Well-Established Precedent Supports Front Carriers' Method of
Proceeding** ………………………………………………………………5

    **C.**    **Transfield's "Premature Attachment" Arguments Rely On Inapposite
Precedent** ………………………………………………………………...8

    **D.**    **Front Carriers Retains Its Right To Demand Arbitration If It So Chooses**....9

**POINT II**

**FRONT CARRIERS CAN SATISFY THE *AQUA STOLI* FACTORS
TO MAINTAIN ITS ATTACHMENT AND TRANSFIELD CANNOT
SHOW EQUITABLE GROUNDS TO VACATE THE ATTACHMENT**…………….9

**CONCLUSION**…………………………………………………………………………14

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
  460 F.3d 434 (2d Cir. 2006)..................................................................................... *passim*

*Chatham Shipping Co. v. Fertex S.S.  Corp.*,
  352 F.2d 291 (2d Cir. 1965)................................................................................9, 14

*Dolco Investments, Ltd. v. Moonriver Development, Ltd.*,
  486 F. Supp. 2d 261 (S.D.N.Y. Apr. 26, 2007) ....................................................11

*Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA*,
  No. 05 Civ. 4550, 2005 WL. 2218025 (S.D.N.Y. Sept. 9, 2005).................................... *passim*

*Greenwich Marine, Inc. v. S.S. ALEXANDRA*,
  225 F. Supp. 671 (S.D.N.Y. 1964) .........................................................................7

*Greenwich Marine, Inc. v. S.S. ALEXANDRA*,
  339 F.2d 901 (2d Cir. 1965)...........................................................................6, 7, 8

*Japan Line, Ltd. v. Willco Oil Ltd.*,
  424 F. Supp. 1092 (D. Conn. 1976)...............................................................8, 10, 12

*J.K. International, Pty., Ltd. v. Agriko S.A.S.*,
  No. 06 Civ. 13259, 2007 WL. 485435 (S.D.N.Y. Feb. 13, 2007) ..........................................6, 8

*Marine Transit Corp. v. Dreyfus*,
  284 U.S. 263 (1932).................................................................................................5

*North of England Protection & Indem. Ass'n v. M/V Nara*,
  No. 99 Civ. 0464, 1999 WL. 33116416 (E.D. La. Feb. 26, 1999) ....................................11, 13

*Royal Swan navigation Co. v. Global Container Lines, Ltd.,,*
  868 F. Supp. 599 (S.D.N.Y. 1994) ..........................................................................12

*SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*,
  No. 06 Civ. 15375 (KMK), 2007 WL. 831810 (S.D.N.Y. Mar. 15, 2007) ..................9, 10, 11

*Texas San Juan Oil Corp. v. An-Son Offshore Drilling Co.*,
  194 F. Supp. 396 (S.D.N.Y. 1961) ...........................................................................7

*The ANACONDA v. American Sugar Refining Co.*,
  322 U.S. 42 (1944)................................................................................................5, 6

*The BELIZE,*
    25 F. Supp. 663 (S.D.N.Y. 1938) ..............................................................................9

*Tide Line, Inc. v. Estrade Commodities, Inc., and Transclear, S.A.,*
    09 Civ. 1979 (KMW), 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y.
    Aug. 15, 2006) .................................................................................................. *passim*

*Transportes Navieros Y Terrestes, S.A. de D.V. v. Fairmount Heavy Transport N.V.,*
    No. 07 Civ. 3076 (LAP), 2007 WL. 1989309 (S.D.N.Y. Jul. 6, 2007) ..............10, 11

*Ullises Shipping Corp. v. FAL Shipping Co.,*
    415 F. Supp. 2d 318 (S.D.N.Y. 2006)..............................................................11, 13

*Wajilam Exps. (Sing.) Pte. Ltd. v. ATL Shipping Ltd.,*
    475 F. Supp. 2d 275 (S.D.N.Y. 2006).......................................................10, 11, 13

*World Reach Shipping Ltd. v. Industrial Carriers Inc.,*
    No. 06 Civ. 3756 (NRB), 2006 U.S. Dist. LEXIS 83224 (S.D.N.Y. Nov. 9, 2006) ...10, 11, 13

## STATUTES

Federal Arbitration Act, 9 U.S.C. § 8 ....................................................................... *passim*

\# 4759333_v1

## PRELIMINARY STATEMENT

Defendant Transfield ER Cape Ltd.'s motion to vacate Plaintiff Front Carrier Ltd.'s maritime attachment presents the following issues for determination:

The Federal Arbitration Act ("FAA") specifically provides that a plaintiff may obtain a maritime attachment and then request the Court to direct the parties to arbitration without an arbitration demand first being made. Transfield appeared last Friday and immediately moved to vacate Front Carriers' attachments on grounds that it had not yet commenced arbitration, although Transfield knew of this lawsuit from its outset. Should this Court vacate Front Carriers' attachment where the FAA specifically provides that Front Carriers can act as it has?

At a post-attachment hearing under Supplemental Rule E(4)(f), a maritime plaintiff need only state a *prima facie* admiralty claim and is not required to prove its case. Transfield seeks to vacate Front Carriers' attachment by attacking Front Carriers' claims on the merits, including claiming that Front Carriers failed to comply with contractual provisions and that it was negligent. In light of the threshold nature of the inquiry to be conducted at a Rule E(4)(f) hearing, should this Court use Transfield's version of events to vacate Front Carriers' maritime attachments?

## STATEMENT OF FACTS

Front Carriers entered into its contract of affreightment with Transfield ER Cape Ltd. ("COA") for the purpose of fulfilling its own lifting requirements under a separate contract of affreightment with a third-party charterer, Atic. Affirmation of Jon Flaaten dated August 28, 2007 ("Flaaten Aff."), at ¶ 2.

Transfield claims that it provided a vessel in response to a nomination under the COA for March 2007, which was supposed to satisfy lifting number four of five under the COA. *Id.* ¶ 3.

1

Transfield's representation is not correct. *Id.* Front Carriers sought to employ the Transfield vessel in March 2007 in order to mitigate its damages that were going to accrue as a result of Transfield refusing to provide a vessel in May 2007 to satisfy the fourth lifting under the COA. *Id.* Transfield, however, was not willing to send the vessel to the ports nominated by Front Carriers. *Id.* Significantly, the vessel that Transfield purportedly "dutifully provided" never was presented. *Id.*

Transfield acted similarly with regard to the fifth lifting under the COA, by refusing to provide a vessel in accordance with Front Carriers' request, which sought a vessel during the first two weeks of September 2007. *Id.* ¶ 4. Instead, Transfield advised Front Carriers that it could provide a vessel during the first two weeks of August 2007. *Id.* After the previous attempt at mitigation had failed with Front Carriers being damaged even further, Front Carriers refused to take the offered vessel in mitigation and instead has claimed for Transfield's failure to perform. *Id.*

While these events were unfolding, Front Carriers instructed counsel in Paris, France on June 27, 2007 in preparation for arbitration with Transfield. Affirmation of Lasse Brautaset dated August 28, 2007 ("Brautaset Aff."), at ¶ 2. It also likewise instructed New York counsel to commence a Rule B maritime attachment in order to attempt to obtain security for its claims against Transfield. *Id.* ¶ 3.

Front Carriers' New York Rule B proceeding was filed on July 11, 2007. Affidavit of Michael J. Frevola dated August 28, 2007 ("Frevola Aff."), ¶ 3. Transfield was aware of this proceeding no more than two days later. *See id.* & Ex. 1. On Friday, July 20, 2007, Transfield's counsel wrote to indicate that he would be proposing a security/countersecurity agreement within the next few days:

Mike,

This is fine and acceptable.  Thanks.

***As for moving forward, I am receiving information and instructions regarding the competing claims and will be reverting within the next few days with regard to a possible proposal on substitute security and likely with a demand for countersecurity.***

Kind regards,
Patrick F. Lennon

*See* Frevola Aff., Ex. 2 (emphasis added).

Front Carriers' New York counsel forwarded Transfield's July 20 e-mail to Norwegian counsel, Nordisk Legal Services, to advise it of the status of this proceeding.  *See* Frevola Aff., ¶ 5; Brautaset Aff., ¶ 4.  Because Transfield's counsel had suggested that it would be proposing a security arrangement, Front Carriers' counsel waited for that proposal before defaulting Transfield in New York or demanding arbitration in Paris.  *See* Frevola Aff., ¶ 5; Brautaset Aff., ¶ 4.  Transfield's suggestions of delay and unfairness raised in its motion to vacate greatly surprised Front Carriers' counsel, especially because the grounds sought was for Front Carriers' "delay" in proceeding in Paris when the purported "delay" was based on Transfield's counsel's promise to revert with a possible security proposal.

Furthermore, it is not unusual for plaintiff's to await obtaining full security (or an agreement on security) prior to commencing arbitration.  Indeed, Transfield's counsel's firm recently acted in precisely the same fashion as plaintiff's counsel in a recent proceeding in which counsel were reversed in representing plaintiff and defendant.  *See* Frevola Aff., ¶¶ 7-8 & Ex. 3. In that proceeding, the plaintiff demanded arbitration forty seven days after the Rule B proceeding was commenced and several weeks after $650,000 had been attached.  *See id.*  Here, today is the forty eighth day since this proceeding was filed.

3

Finally, Front Carriers still is unable calculate its damages in order to submit its precise claim to the arbitrators.  As explained by the accompanying Flaaten Affirmation, the damages resulting from the failed fifth lifting under the COA will not be known until after approximately November 15, 2007.  Flaaten Aff., ¶ 5.

## ARGUMENT

Transfield seeks to vacate Front Carriers' maritime attachment against well-settled statutory and decisional authority to the contrary.  Transfield's Order to Show Cause states that Front Carriers should show, *inter alia*, why (1) this Court's order of attachment (the "Order") should not be vacated as premature as the underlying arbitration proceedings have not been commenced; (2) why the Order should not be vacated or reduced on an equitable basis; and (3) why this Court should not dismiss Front Carriers' proceeding for lack of jurisdiction.

With respect to contentions (1) and (3), Transfield's argument runs contrary to settled U.S. Supreme Court precedent and the FAA itself.  The plain language of Section 8 of the FAA permits Front Carriers to proceed as it has.  With respect to contention (2), Transfield sets forth none of the limited bases for equitable vacatur or reduction that are discussed in the Second Circuit's recent decision in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006).  *Aqua Stoli* makes clear that vacatur for equitable grounds is narrowly circumscribed, and none of the limited exceptions have been presented here by Transfield.

## POINT I

### FRONT CARRIERS' COMMENCEMENT OF THIS ATTACHMENT PROCEEDING BEFORE DEMANDING ARBITRATION CLEARLY IS PERMITTED UNDER GOVERNING LAW

Front Carriers first addresses why this Court's Order is not premature and why this Court has jurisdiction over this proceeding.

**A.     The United States Code Authorizes Front Carriers' Method of Proceeding**

Section 8 of the FAA specifically provides that a claimant may proceed as Front Carriers has in this proceeding, by using a maritime attachment to commence a proceeding against its opponent and then subsequently requesting that the court direct the parties to arbitration:

> **§ 8. Proceedings begun by libel in admiralty and seizure of vessel or property**
>
> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, *the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration* and shall retain jurisdiction to enter its decree upon the award.

9 U.S.C. § 8 (emphasis added).

As discussed below, the Supreme Court and other courts interpreting this statute are uniform in holding that Section 8 permits a plaintiff to a maritime contract with an arbitration clause to do precisely what Front Carriers has done here:  commence an attachment proceeding in order to obtain security prior to seeking this Court's order directing the parties to arbitration.

**B.     Well-Established Precedent Supports Front Carriers' Method of Proceeding**

In *The ANACONDA v. American Sugar Refining Co.*, 322 U.S. 42 (1944), the plaintiff and defendant were parties to a voyage charter containing an arbitration clause. *Id.* at 43. As

here, the plaintiff filed a complaint *in personam* against the defendant and requested that process issue to attach defendant's property. *Id.* As here, plaintiff's request was granted and defendant's property was attached. *Id.* As here, the defendant referred to the parties' arbitration agreement and argued that the court lacked jurisdiction. *Id.* The district court dismissed plaintiff's case, but the Fifth Circuit reversed that decision. *Id.* at 43-44.

On appeal, the Supreme Court held that the plaintiff's commencement of the lawsuit to obtain security prior to commencing arbitration was proper and specifically contemplated by the FAA, and that the FAA permitted the plaintiff to even forego arbitration if it so chose (subject to the defendant's right to request arbitration):

> Here again [Section 8 of] the Act *plainly contemplates that one who has agreed to arbitrate may, nevertheless, prosecute his cause of action in admiralty*, and protects his opponent's right to arbitration by court order. Far from ousting or permitting the parties to the agreement to oust the court of jurisdiction of the cause of action the statute recognizes the jurisdiction and saves the right of an aggrieved party to invoke it.

*Id.* at 45; *accord Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 275 (1932) (upholding plaintiff's commencement of the dispute – and right to enforce results of later arbitration – by filing an admiralty lawsuit against the defendant prior to demanding arbitration).

In *Greenwich Marine, Inc. v. S.S. ALEXANDRA*, 339 F.2d 901 (2d Cir. 1965), then-Circuit Judge Thurgood Marshall cited *The ANACONDA* in describing the rights afforded a maritime plaintiff under Section 8 of the FAA:

> Section 8 provides that a party may obtain an order compelling arbitration on a claim even though the party chose to initiate a suit in admiralty on that same claim; it also provides that if this suit is commenced, the order can be obtained within the proceeding and that there is no need to follow the procedure prescribed in section 4 of commencing a separate procedure by filing a petition. The purpose

6

of section 8 is to relieve a party from making an election between the libel-cum-seizure remedy, on the one hand, and the order-to-arbitrate remedy, on the other hand- not to append the right to seizure to the order-to-arbitrate remedy of section 4. *See Anaconda v. American Sugar Refining Co.*, 322 U.S. 42 . . . (1944); *Marine Transit Co. v. Dreyfus*, 284 U.S. 263 . . . (1932). Hence, the principal question is whether [plaintiff]'s libel stated a good "cause of action" in admiralty against the [vessel] and [defendant], thereby entitling it to have the U.S. Marshal seize the [vessel].

*Greenwich Marine*, 339 F.2d at 904.

Thus, contrary to Transfield's unsupported assertions, this Court has jurisdiction over this proceeding. Indeed, in the absence of a party petitioning this Court to stay this proceeding and refer this matter to arbitration, this Court has jurisdiction to decide the ***entire dispute*** between the parties. The district court decision in the *Greenwich Marine* case, *Greenwich Marine, Inc. v. S.S. ALEXANDRA*, 225 F. Supp. 671 (S.D.N.Y. 1964), sets forth this very principle:

> ***If, after the libel has been filed, no party asks for an order directing arbitration, then the cause of action set forth in the libel is tried out just as in any other admiralty suit.*** If a party does wish to invoke the agreement to arbitrate, then a motion may be made under Section 8 in the pending admiralty suit . . . .

*Id.* at 674 (emphasis added).

Transfield may suggest that Front Carriers was required to demand arbitration before commencing this proceeding and attaching Transfield's property. Once again, this suggestion would contradict a number of decisions holding to the contrary and should be rejected. *See, e.g., Texas San Juan Oil Corp. v. An-Son Offshore Drilling Co.*, 194 F. Supp. 396, 398 (S.D.N.Y. 1961) (citing numerous cases rejecting this contention). Indeed, as mentioned above in the Statement of Facts, Transfield's counsel's firm proceeded precisely in the same fashion in a Rule B proceeding before Judge Batts a few months ago.

C.    Transfield's "Premature Attachment" Arguments Rely On Inapposite Precedent

The two decisions cited by Transfield to support its "premature attachment" argument both involve unripe indemnity claims. In *J.K. International, Pty., Ltd. v. Agriko S.A.S.*, No. 06 Civ. 13259, 2007 WL 485435 (S.D.N.Y. Feb. 13, 2007), this Court reviewed a number of decisions involving whether the plaintiff in that case should be permitted pre-judgment attachment on its indemnity claim before ultimately concluding that the plaintiff's counsel's statement at oral argument was insufficient to carry plaintiff's burden to justify maintaining the attachment. *See* 2007 WL 485435, at *5 (reciting cases).

In *Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA*, No. 05 Civ. 4550, 2005 WL 2218025 (S.D.N.Y. Sept. 9, 2005), Judge Chin likewise vacated plaintiff's attachment in part on grounds that the speculative harm contemplated was possible indemnity liability in a yet to be commenced London arbitration. *Id.* at *2 (reciting complaint as alleging indemnity claims having been asserted against plaintiff in London but noting plaintiff's later admission that no arbitrations were pending in London).

As courts of this district have noted repeatedly since *Greenwich Marine, Inc. v. S.S. ALEXANDRA*, 339 F.2d 901 (2d Cir. 1965), there are situations where the circumstances warrant finding that an indemnity claim may not be ripe and that a maritime attachment obtained on such a claim should be vacated. *See J.K. Int'l*, 2007 WL 485435, at *5 (reciting cases). The present claim by Front Carriers, however, is not an indemnity claim. Rather, it is a direct claim against its contractual partner Transfield for Transfield's failures to perform under the contract of affreightment between the parties. Because Front Carriers' claims against Transfield are not for indemnity and do not raise the ripeness issues presented in the context of certain indemnity claims, Transfield's cited precedent does not apply to the facts present in this case.

8

Furthermore, the premature attachment argument rings hollow in light of the sequence of events in this case. Transfield knew of this proceeding within two days after it was filed. Rather than appearing and demanding referral to arbitration, or immediately seeking to vacate the attachment, Transfield advised that it would write concerning a proposal for security and countersecurity and then, in its next substantive move, filed this motion seeking to vacate the attachment because of Front Carriers' "delay." Any such delay was caused by giving Transfield the courtesy of time to propose a security agreement.

**D.      Front Carriers Retains Its Right To Demand Arbitration If It So Chooses**

Transfield also could argue that Front Carriers has waived its right to demand arbitration. This argument likewise should not succeed, because such a waiver never is found before the defendant has answered and should not be found unless the party demanding arbitration has acted inconsistently with its arbitration rights. *See, e.g., Chatham Shipping Co. v. Fertex S.S. Corp.*, 352 F.2d 291, 293 (2d Cir. 1965) (citations omitted); *The BELIZE*, 25 F. Supp. 663, 664-65 (S.D.N.Y. 1938). Here, Transfield has not answered and had not even appeared until last Friday. Under these circumstances and governing law, Front Carriers should not be deemed to have waived its right to demand arbitration.

## POINT II

### FRONT CARRIERS CAN SATISFY THE *AQUA STOLI* FACTORS TO MAINTAIN ITS ATTACHMENT AND TRANSFIELD CANNOT SHOW EQUITABLE GROUNDS TO VACATE THE ATTACHMENT

In *Aqua Stoli,* the Second Circuit emphasized that "Rule B specifies the sum total of what must be shown for a valid maritime attachment." 460 F.3d at 447. As recently stated by this Court in *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.,* No. 06 Civ. 15375 (KMK), 2007 WL

9

831810, at *2 (S.D.N.Y. Mar. 15, 2007), and consistently by courts throughout this district, maritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing. *See, e.g., Transportes Navieros Y Terrestes, S.A. de D.V. v. Fairmount Heavy Transport N.V.,* No. 07 Civ. 3076 (LAP), 2007 WL 1989309, at *4 (S.D.N.Y. Jul. 6, 2007); *Wajilam Exps. (Sing.) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 279 (S.D.N.Y. 2006); *see also J.K. Int'l,* 2007 WL 485435, at *2 (citation omitted). Rather, as made clear in *Aqua Stoli,* only the filing and service requirements of Supplemental Rules B and E and the following four elements must be satisfied by the plaintiff:

> 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

*J.K. Int'l,* 2007 WL 485435, at * 2 (quoting *Aqua Stoli,* 460 F.3d at 445).

Front Carriers' Verified Complaint against Transfield clearly meets these standards. There is no dispute with respect to factors (2), (3), and (4), which are alleged with support in the Verified Complaint and Rule B attachment papers and which Transfield essentially concedes in its papers submitted in support of its Order to Show Cause. To the extent that Transfield challenges factor (1), which is questionable, Transfield's arguments go to the ultimate merits of Front Carriers' claims, which are not properly the subject of a Rule E(4)(f) proceeding. *See World Reach Shipping Ltd. v. Industrial Carriers Inc.,* No. 06 Civ. 3756 (NRB), 2006 U.S. Dist. LEXIS 83224, at *7 (S.D.N.Y. Nov. 9, 2006).

In *Wajilam,* the court explained as follows regarding why a plaintiff should not have to prove its case in a Rule E(4)(f) proceeding:

10

> Discovery has not yet been had, and it would defeat the purpose of attachment –
> preserving defendants' assets in case plaintiff is able to prevail at trial or on
> summary judgment – to require at this state that plaintiffs asserting a "valid *prima
> facie* maritime claim" prove that the facts in the complaint are true.

*Wajilam,* 475 F. Supp. 2d at 279 (citing *Japan Line, Ltd. v. Willco Oil Ltd.,* 424 F. Supp. 1092,

1094 (D. Conn. 1976) (Newman, J.)).

The majority of courts in this district who have considered this issue interpret *Aqua Stoli*

as requiring application of the *prima facie* standard when considering the adequacy of a maritime

attachment claim.   *Dolco Investments, Ltd. v. Moonriver Development, Ltd.,* 486 F. Supp. 2d

261, 267 (S.D.N.Y. Apr. 26, 2007) (providing summary of cases, including *SPL Shipping Ltd.,*

2007 WL 831810); *see also Transportes Navieros,* 2007 WL 1989309, at *43 (collecting cases);

*Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06 Civ. 1979 (KMW), 2006 U.S. Dist. LEXIS

95870, at *15 (S.D.N.Y. Aug. 15, 2006).

Pursuant to Supplemental Rules B and E, a plaintiff need not provide anything beyond its

Verified Complaint. *Tide Line, Inc.,* 2006 U.S. Dist. LEXIS 95870, at *15.   Likewise, under the

*prima facie* standard, the court looks to the Verified Complaint to ascertain whether the plaintiff

has alleged a valid admiralty claim. *SPL Shipping,* 2007 WL 831810, at *3.   As Judge Kimba

Wood explained:

> to show that it has a *prima facie* claim, a plaintiff seeking a maritime attachment
> need not provide any supporting evidence; its complaint should suffice.
> Furthermore, *Aqua Stoli* implies that a plaintiff likewise is not required to provide
> evidence showing that it has a claim against defendant to carry its burden under
> Supplemental Rule E(4)(f).

*Id.* at *16-17 (internal footnote omitted); *see also Transportes Navieros,* 2007 WL 1989309, at

*4.   Front Carriers has alleged a valid maritime claim in its Verified Complaint, and established

the four *Aqui Stoli* factors necessary to maintain a Rule B attachment.

11

If the four *Aqua Stoli* prerequisites are satisfied, "[a]ttachments may otherwise only be vacated 'in certain limited circumstances.'" *J.K. Int'l*, 2007 WL 485435, at *3 (quoting *Aqua Stoli*, 460 F.3d at 444). Those circumstances recited by the *Aqua Stoli* court were where "the defendant shows that: '1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.'" *J.K. Int'l*, 2007 WL 485435, at *3 (quoting *Aqua Stoli*, 460 F.3d at 445).

Transfield does not attempt to argue that one of the three "limited circumstances" enumerated in *Aqua Stoli* as justifying vacatur of an otherwise valid maritime attachment are present in this case. Instead, under the guise of its request for vacatur on "*equitable* grounds" (Transfield Memorandum of Law, at 6), Transfield seeks to impose on this Court precisely the type of "fact intensive inquiry," rejected by *Aqua Stoli* and its progeny. *See Tide Line, Inc.,* 2006 U.S. Dist. LEXIS 95870, at *15 (citing *Aqua Stoli,* 460 F.3d at 446-47). As noted in *Tide Line, Inc.*, the *Aqua Stoli* court "rejected the approach taken by the district court in *Royal Swan Navigation Co. v. Global Container Lines, Ltd,* 868 F. Supp. 599 (S.D.N.Y. 1994), which would impose a fact intensive inquiry . . . before deciding whether an attachment should be vacated." *Tide Line, Inc.,* 2006 U.S. Dist. LEXIS 95870, at *15 (citing *Aqua Stoli,* 460 F.3d at 446-47).

The weakness of Transfield's challenges to Front Carriers' attachment on the basis that Front Carriers does not have a valid *prima facie* admiralty claim against the defendant is evidenced in its statement of "Facts" on pages 1-2 of its memorandum of law where the following is conceded: (1) there was a maritime contract in existence between the parties to this action; (2) there is a genuine dispute as to whether Transfield breached the contract between the

12

parties; (3) the contract provided for shipments of coal to be made by Transfield, which were not made; and (4) Front Carriers suffered "damages," with which there is genuine dispute regarding the cause of those damages.

As discussed above, courts do not require plaintiffs to prove their claims to sustain the attachment. *See, e.g., Wajilam Exports*, 475 F. Supp. 2d at 278. With respect to damages, the plaintiff "need not prove its damages with exactitude." *World Reach Shipping*, 2006 U.S. Dist. LEXIS 83224, at *7 (citing *Ullises Shipping Corp. v. FAL Shipping Co.*, 415 F. Supp. 2d 318, 325 (S.D.N.Y. 2006)). In sum, "[a] Rule E (4)(f) hearing is not intended to resolve the dispute between the parties." *North of England Protection & Indem. Ass'n v. M/V Nara*, No. 99 Civ. 0464, 1999 WL 33116416, at *2 (E.D. La. Feb. 26, 1999). This court "must simply be satisfied that [Front Carriers'] claims are non-frivolous." *World Reach Shipping*, 2006 U.S. Dist. LEXIS 83224, at *8. Here, the only aspect of Front Carriers' maritime attachment challenged by Transfield is the validity of Front Carriers' claim. Where there is an acknowledged maritime contract, a failure to perform by Transfield, and damages alleged by Front Carriers, there is no question that Front Carriers has satisfied its burden under *Aqua Stoli* and is entitled to maintain its attachments.

## **CONCLUSION**

Because Front Carriers is permitted under both the FAA and controlling case law to obtain maritime attachments prior to commencing an arbitration against Transfield, and because Transfield's merits based arguments are inappropriate to be decided by the threshold Rule E(4)(f) motion, this Court should deny Transfield's motion to vacate Front Carriers' maritime attachments.

Dated: New York, New York
      August 28, 2007

HOLLAND & KNIGHT LLP

By: _____
      Michael J. Frevola
      Lissa Schaupp
      195 Broadway
      New York, NY 10007-3189
      Tel:   (212) 513-3200
      Fax:  (212) 385-9010

      *Attorneys for Plaintiff*
      *Front Carriers Ltd.*

To:    Patrick F. Lennon, Esq.
       Lennon, Murphy & Lennon, LLC
       The GrayBar Building
       420 Lexington Ave, Suite 300
       New York, NY 10170
       *Counsel for Defendant*
       *Transfield ER Cape Ltd.*

## ATTORNEY'S AFFIRMATION OF SERVICE

STATE OF NEW YORK     )
                             ) SS.:
COUNTY OF NEW YORK  )

      RUDY D. GREEN, an attorney admitted to practice in the Courts of the State of New York, affirms under penalty of perjury:

      That on August 28, 2007, I served a true copy of the attached Memo, via email to the following:

      Patrick F. Lennon, Esq.
      Lennon, Murphy & Lennon LLC
      pfl@lenmur.com


Dated: August 28, 2007

RUDY D. GREEN