UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
FRONT CARRIERS LTD.,                            :

              Plaintiff,              :

   - against -                                    :   07 Civ. 6333 (RJS)

TRANSFIELD ER CAPE LTD.,                        :

              Defendant.              :
------------------------------------------------------X

**REPLY MEMORANDUM OF LAW OF TRANSFIELD ER CAPE LTD.
IN FURTHER SUPPORT OF MOTION FOR COUNTERSECURITY**

*Of counsel:*

Patrick F. Lennon, Esq.
Nancy R. Peterson
Lennon, Murphy & Lennon, LLC
Attorneys for Defendant
TRANSFIELD ER CAPE LTD.
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone:   (212) 490-6050
Facsimile:    (212) 490-6070

Defendant, TRANSFIELD ER CAPE LTD. (hereinafter "Transfield" or "Defendant"), by its undersigned counsel, Lennon, Murphy & Lennon, LLC, files the within Reply Memorandum of Law in Further Support of Defendant's Motion for Countersecurity. For the reasons set forth herein and in Transfield's main Memorandum of Law and supporting Declarations, the Motion for Countersecurity should be granted.

## FACTS

The relevant facts are set out in the Declarations of Nancy R. Peterson, Steve Tse, Transfield's Senior Manager, and Olivier Purcell, its French counsel.

## PRELIMINARY STATEMENT

It will not be lost on the Court that whereas FCL has alleged stunningly inflated damage claims in its Verified Complaint, which were then inflated even more in its Amended Complaint, and now total $15,101,338, FCL begins its opposition to the Motion for Countersecurity by declaring Transfield's counterclaim to be "extraordinary" because despite FCL's breach of the Contract of Affreightment ("COA") between them, Transfield generated a profit by way of its mitigation efforts. Extrapolating on this fact, FCL illogically claims Transfield's Motion for Countersecurity should be denied because, in FCL's mistaken view, Transfield suffered no damage. *See FCL Memo of Law at 1.* FCL is wrong, however, because as is alleged in its counterclaim, Transfield suffered loss of profit damages it would have realized, beyond the profit it actually did generate on the mitigation contract, but for FCL's breach of the COA.

Realizing that its primary argument is unavailing, FCL goes further by characterizing Transfield's damages as "unforeseeable" consequential damages for which it allegedly failed to give notice to FCL. Again, FCL's argument must fail if for no other reason than the fact that the Declaration of Mr. Flaaten, FCL's representative, establishes that the volatile charter market was

well known to FCL and, therefore, the fact that Transfield would potentially suffer the type and magnitude of consequential damages in the form of lost profits, as alleged in the Transfield counterclaim, was entirely foreseeable to FCL. *See Tse Decl. dated October 26, 2007 ¶¶ 13-15.*

Finally, FCL's opposition to the Motion for Countersecurity completely ignores well-established and controlling case law which makes clear that the type of microscopic analysis of claims at the pleading stage, especially in circumstances where the claim will be judged on the merits in a separate arbitral proceeding, is inappropriate. The only issues this Court is required to resolve on Transfield's Motion for Countersecurity are whether: (a) Transfield has alleged a *prima facie* valid claim; (b) whether Transfield's claim is frivolous; and (c) whether Transfield's claim is reasonably calculated. The answer to all three inquiries, as set forth herein, is yes.

Accordingly, because Transfield has sufficiently pled its counterclaim and reasonably calculated its damages the motion should be granted without the Court over-scrutinizing the counterclaim under the merits based inquiry urged by FCL because to do otherwise would be fort his Court to invade the sole province of the French arbitrators.

## POINT I

### THE TYPE OF FACTUAL INQUIRY URGED BY FCL IS IMPROPER

The concept of countersecurity is found in the first promulgation of the rules in American admiralty courts and it continues today with little substantive change in Supplemental Admiralty Rule E(7). Supplemental Rule E(7)(a) provides in relevant part as follows:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages in the counterclaim unless the court for cause shown directs otherwise.

*See* Fed. R. Civ. P. Supp. Adm. E(7)(a).

By failing to address the issue, FCL concedes that Transfield's counterclaim arises from the same transaction or occurrence as FCL's claims. Thus, this part of Rule E(7) is satisfied.

Nonetheless, FCL challenges the validity of Transfield's counterclaim on a factual and legal basis. The vast majority of district courts in the context of the Supplemental Admiralty Rules have understood the Second Circuit's decision in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.,* 460 F. Supp. 434 (2d Cir. 2006) to require the application of the *prima facie* standard when considering the adequacy of a claim in a maritime vacatur motion. *See Dolco Invs., Ltd. v. Moonriver Dev., Ltd.,* 486 F. Supp. 2d 261, 266 (S.D.N.Y. 2007); *SPL Shipping Ltd.,* 2007 U.S. Dist. LEXIS 18562; *Tide Line, Inc. v. Eastrade Commodities, Inc.,* 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006). There is no just reason, and no basis in the Supplemental Admiralty Rules or interpretive case law, for the application of a different standard to a maritime claim asserted as a counterclaim, as opposed to an affirmative claim. In other words, if in challenging the validity of the maritime attachment of its property by FCL, this court would have to apply a *prima facie* pleading standard when analyzing FCL's Amended Complaint, there is no basis in law or logic for Transfield's counterclaim to be scrutinized on the merits in the manner advocated by FCL.

As was FCL, Transfield was only required to plead a *prima facie* valid counterclaim. It is commonly accepted that verified allegations in a complaint submitted with accompanying request for an ex parte order for Rule B attachment are sufficient to assert and establish a *prima facie* claim in admiralty, which is exactly how FCL obtained the two ex parte orders issued in this case. As stated by Chief Judge Wood in *Tide Line Inc. v. Eastrade Commodities Inc.,* 2006 U.S. Dist. LEXIS 95870 *15-16 (S.D.N.Y. August 15, 2006):

> For a plaintiff to show that "it has a valid prima facie admiralty claim against the defendant" . . . in the context of maritime attachment, it appears that a plaintiff

3

> need not provide anything beyond its Verified Complaint, pursuant to Supplemental Rules B and E. A court relies only on a plaintiff's complaint to determine if the plaintiff has shown that it has such a claim against the defendant . . . See Fed. R. Civ. P. Supp. Rule B(1) . . . see also *Aqua Stoli Shipping Ltd.*, 460 F.3d at 438, 2006 WL 2129336, at *3, 2006 U.S. App. LEXIS 19302 at *8-9 . . . Furthermore, Aqua Stoli implies that a plaintiff is likewise not required to provide evidence showing that it has a claim against defendant to carry its burden under Supplemental Rule E(4)(f). See *Aqua Stoli Shipping Ltd.*, 460 F.3d 19302 at *12 (holding that "once a plaintiff has carried his burden to show that his attachment satisfies the requirements of Supplemental Rule B, a district court may vacate an attachment only upon [certain] circumstances," which are very limited. . . . ).

*Tide Line*, 2006 U.S. Dist. Lexis 95780 at *15-16. If FCL was only required to plead a *prima facie* claim, it cannot contend, in law or equity, that Transfield's counterclaim should be adjudged under a different standard. Accordingly, under the *prima facie* pleading standard applied by the district courts applying the Supplemental Admiralty Rules, Transfield was required only to plead a *prima facie* valid claim. The Declaration of Olivier Purcell, Transfield's French counsel, combined with the admissions set forth in the Declaration of Gilles Gautier, sufficiently carry Transfield's burden of proving that it has sufficiently pled such a claim. *See Purcell Declaration ¶¶ 4-10; Gautier Declaration ¶ 29.*[1] Thus, because Transfield has pled a *prima facie* valid claim under French law, its motion for countersecurity must be granted.

## POINT II

### COUNTERSECURITY IS WARRANTED BECAUSE FCL HAS FAILED TO SHOW CAUSE WHY IT SHOULD NOT BE ORDERED

A court should consider whether the posting of countersecurity will prevent the plaintiff from prosecuting its claims, whether the countersecurity involves the release of seized property,

---

[1] FCL mischaracterizes the declaration of its own French counsel in wrongly claiming that Transfield's counterclaim would not be accepted under French law. *See FCL Memo of Law at 12.* Quite the contrary, as Transfield's French counsel attests, he and FCL's counsel, Mr. Gautier, are in agreement with regard to the parameters of French law as it applies to this dispute, particularly with respect to Transfield's right to recover lost profits upon proof of the fixture rates. *See Purcell Decl. ¶ 10, Gautier Decl. ¶ 29.* Accordingly, there is no dispute regarding French law – Transfield has asserted a *prima facie* valid counterclaim that French counsel both confirm is recoverable under French law.

4

whether the counterclaim is frivolous or so lacking in merit that it was advanced "solely to secure a negotiating advantage over the complainant," whether the counterplaintiff could have proceeded *in rem*, and the potential injustice of requiring one party to post security while the other party does not. *See Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir. 1987). Here, FCL has not shown cause why Transfield should be denied countersecurity. The injustice that would result if this Court were to allow FCL to have security by way of attaching millions of dollars of Transfield's property while at the same time denying Transfield countersecurity is patent.

Although FCL acknowledges and cites the controlling case law on the issue of countersecurity, it fails to heed their basic tenets. For example, FCL cites both *Titan Navigation, supra,* and *Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629 (1924), but its discussion of these cases is wafer thin. *FCL Memo of Law at 8*. Rather, FCL delves right back into a detailed factual and merits based criticism of Transfield's counterclaim which, as set forth in Point I, *supra*, is improper. It is noteworthy that Transfield's motion is for a statutorily authorized order for countersecurity. Yet, FCL's opposition papers read more like a motion to dismiss the counterclaim. If FCL ultimately seeks dismissal of Transfield's counterclaim, it must do so in the arbitration proceedings between the parties in Paris, France, which Transfield has been advised FCL commenced only just this week. *See Declaration of Steve Tse* ¶ 7.

For this Court to rise to the bait offered by FCL's opposition papers by engaging in a detailed factual inquiry into the merits of Transfield's counterclaim would be to invade the province of the arbitrators who have been given the sole authority to decide the merits of all of

the claims arising from the overall COA dispute.[2] *See Finecom Shipping Ltd. v. Multi Trade Enterprises AG*, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. October 24, 2005) (court granted countersecurity despite plaintiff's allegation that counterclaim was frivolous because the ultimate merits were to be decided by foreign arbitrators applying foreign law). Judge Lynch's following reasoning in *Finecom* is equally apt here: "a court's ability to understand the merits of a dispute at an early stage is limited, and **courts should be reluctant to prejudge the merits** of claims based essentially on the pleadings and a sparse record consisting of a few documents, in advance of any discovery. **This is particularly so when the ultimate merits will be decided not by this Court, but by an arbitration panel in another country**." *Id.* at *4 (emphasis added).[3]

With regard to the *Titan* and *Washington-Southern Navigation* cases, FCL gives short shrift to their import. As the Second Circuit recognized in *Result Shipping Co. Ltd. v. Feruzzi Trading USA Inc.*, 56 F.3d 394, 399 (2d Cir. 1995), these cases stand for the proposition that the goal of Supplemental Rule E(7) is to place the parties on equality as regards security, but not at the costs of imposing burdensome costs on the plaintiff that might prevent it from bringing suit. *Id.* Here, FCL hardly suggests that the costs imposed by having to post countersecurity for Transfield's claims would have the effect of imposing such costs that FCL might abandon its claims against Transfield. In fact, quite to the contrary, while this motion was pending, FCL incurred the not insubstantial cost of commencing arbitration proceedings in Paris, France against Transfield. *Tse Declaration ¶ 7*.

---

[2]  In fact, almost the entirety of FCL's opposition papers, including its Memorandum of Law and supporting Declarations, seek to address the merits of Transfield's counterclaim, which as aforesaid is a matter vested in the sound discretion of the arbitrators and not this Court.

[3]  As the COA between Transfield and FCL calls for application of French law to their dispute, FCL's reliance on American precedents, both judicial and arbitral has no bearing on the issues relating to the merits of Transfield's counterclaim and therefore must be ignored. *See FCL Memo of Law at Point II, pages 9-12.*

Moreover, FCL skews the concept of equality of security by contending that the parties are not on "equal footing" because the damages claimed by FCL are "tangible out of pocket losses" as compared to Transfield's damages for loss of profits. *FCL Memo of Law at 9.* The concept of equality of security has uniformly been applied by the courts with regard to the relative *amount* of damages claimed by the parties, and not to the nature or type of damages sustained by each party. In any event, the concept of reciprocal security for claims is expressly provided for by the Supplemental Admiralty Rules and the mechanism for such has been construed as furthering the goal of placing the parties on equal footing. *See Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc.*, 56 F.3d 394, 399-400 (2d Cir. 1995) citing *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 404 (5th Cir. 1987).

## POINT III

### TRANSFIELD'S COUNTERCLAIM IS REASONABLY CALCULATED

Interestingly, the very cases upon which FCL relies do not support its argument that this Court should engage in a merits-based analysis of Transfield's counterclaim at this stage of the proceeding, *i.e.* the pleading stage. In *World Reach Shipping v. Industrial Carriers, Inc.*, 2006 U.S. Dist. LEXIS 83224 (S.D.N.Y. November 9, 2006), Judge Buchwald in *World Reach* concluded that the damages claimed had been adequately pled in the amended complaint, despite the contention that they had not been supported by any details. *Id.* at *13. Similarly, in *Ullises Shipping Corp. v. Fal Shipping Co. Ltd.*, 415 F.Supp.2d 318, 328-29 (S.D.N.Y. 2006), Judge Scheindlin merely determined whether the plaintiff's damage claims were non-frivolous and reasonably calculated. Finally, contrary to FCL's contention, Judge Buchwald's decision in *Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.*, 2005 U.S. Dist. LEXIS 22409 (S.D.N.Y. October 3, 2005) does not stand for the proposition that the court should engage in a

7

broad evidentiary inquiry to determine the reasonableness of the damages as calculated. Rather, in discussing *Daeshin* in her decision in *World Reach,* Judge Buchwald explained:

> ICI suggested at oral argument that the Court analyzed the merits of a plaintiff's claims in this context in *Daeshin* . . . and should do so again. Contrary to ICI's assertion, the Court did not scrutinize the merits of the parties' claims in *Daeshin*, though it did adjust the plaintiff's security downward based on revised estimates provided by the *plaintiff* about its *own* claims.

*World Reach*, 2006 U.S. Dist. LEXIS 93224 n. 12. FCL has misinterpreted these holdings, none of which supports its notion that this Court must analyze the merits of the counterclaim.

On the question of damages, the claimant is not expected to prove damages to the same degree as would be required at trial. It is well settled that in an attachment proceeding, the plaintiff need not prove its damages with exactitude but the court must be satisfied that the plaintiff's claims are not frivolous. *Dongbu Express Co. v. Navios Corp.*, 944 F. Supp. 235 (S.D.N.Y. 1996). The rule with regard to a defendant's counterclaim should be no different. Here, Transfield has reasonably calculated its loss of profit claim and provided sufficient evidence in the form of its French counsel's declaration (*see Purcell Declaration*) to establish that it has alleged a *prima facie* valid claim for recovery of such loss of profit under governing French law.[4] The viability of Transfield's claim in this regard is conceded by FCL's French counsel, Mr. Gautier, in his Declaration.

To defeat Transfield's Motion for Countersecurity, it is simply insufficient for FCL to deny the facts alleged in Transfield's counterclaim or to recast them for purposes of its opposition to this motion. Even more so than in the context of motion to dismiss, Transfield's

---

[4] The entirety of FCL's Memo of Law at Point III (pages 13-21) is an attack on the substantive merits of Transfield's counterclaim. In the context of this action, which is only an ancillary security proceeding to the Paris arbitration on the substantive claims, FCL is attempting at the pleading phase to obtain a ruling from this Court on the merits of Transfield's counterclaim. As the authorities cited herein make clear, such a determination is not appropriate at this phase of the case and certainly not in the context of this proceeding given the foreign arbitration between the parties.

alleged facts must be accepted as true and the Court must then simply determine if, as a matter of pleading, Transfield has alleged a *prima facie* valid claim under French law. Thus, even at taken at face value, there is no merit to FCL's factual contentions. In addition, FCL's opposition amounts to a denial of the factual allegations in Transfield's counterclaim. This merely represents a classic dispute for ultimate resolution by the fact finder. The fact finder in this case is the Paris arbitration panel, and not (with all respect) this Court. This fact makes the cases FCL relies upon distinguishable concerning the validity of Transfield's damage calculation. For example, in *U.S. Maritime Services, Inc. v. Trade Ventures, Inc.*, 1998 U.S. Dist. LEXIS 10608 (E.D.La. July 8, 1998), although the denied the defendant's motion for countersecurity, the court was acting as the ultimate trier of fact in dealing with the substantive merits of the parties' competing claims and had the benefit of an advanced factual record, including a fully briefed motion for summary judgment. *Id.*

In sum, none of the inapposite authorities FCL relies upon stand for the proposition FCL advances, *i.e.* that Transfield is required to prove the ultimate merits of its claim in order to obtain countersecurity. FCL's argument in this regard turns Rule E(7) on its head, together with the well-established body of precedent cited herein. In any event, even the "evidence" upon which FCL relies in its attempt to rebut Transfield's counterclaim actually supports Transfield's allegations. As set forth in the Declaration of Steve Tse, Exhibit 14 to the Flaaten Declaration proves that if Transfield's factual allegations are accepted as true, it very likely would have obtained a fixture at the prevailing market rate of $107,300 per day, which in turn shows that Transfield's loss of profit damages have been reasonably calculated. *Tse Declaration ¶ 13; Flaaten Declaration ¶¶ 27-29, Exhibit 14.*

Notwithstanding FCL's denial of the merits of Transfield's counterclaim, Transfield has: (a) properly pled a *prima facie* valid counterclaim under French law; (b) shown its claim is not frivolous; (c) reasonably calculated its damages (which are supported on FCL's own evidence. Conversely, FCL has failed to show any cause why countersecurity should not be ordered. Particularly, it has: (a) failed to show that Transfield's claim is either frivolous or has been asserted for an improper purposes; (b) failed to show that it would be financially unable to bring its claims against Transfield if ordered to provide countersecurity; and (c) failed to show that an order of countersecurity would otherwise place the parties on unequal footing. In light of the foregoing, Transfield is entitled to an order that FCL post countersecurity in the form of a surety bond in the sum of $5,210,280.[5]

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, and those reasons set forth in Transfield's main motion papers, the Motion for Countersecurity should be granted.

Dated: October 26, 2007
       New York, NY

                              The Defendant,
                              TRANSFIELD ER CAPE LTD.

By: _____
Patrick F. Lennon (PL 2162)
Nancy R. Peterson (NP 2871)
LENNON, MURPHY & LENNON, LLC
The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 - facsimile

---

[5] As of today, FCL has attached property in which Transfield has an interest in the sum of $6,936,728.84. Thus, it is entirely appropriate under all of the foregoing authorities that FCL be ordered to post countersecurity in the full amount of the counterclaim, *i.e.* $5,210,280 in order to place the parties in equality as regards security.

10

## AFFIRMATION OF SERVICE

I hereby certify that on October 26, 2007, a copy of the foregoing Reply Memorandum of Law in Further Support of Motion for Countersecurity was filed electronically and served by FedEx, return receipt mail and/or facsimile on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

_____
Patrick F. Lennon