UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRONT CARRIERS LTD.,

                        Plaintiff,

   -v-

TRANSFIELD ER CAPE LTD., TRANSFIELD ER LTD.,

                       Defendants.

No. 07 Civ. 6333 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

    Defendant Transfield ER Cape Ltd. ("Transfield") moves for security for its counterclaim in this maritime action pursuant to Rule E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rules").[1] For the following reasons, the motion is granted.

## I. Background

    Plaintiff Front Carriers Ltd. ("FCL") alleges that Transfield breached a contract of affreightment (the "COA") with FCL, wherein FCL agreed to employ some of Transfield's vessels. The matter is subject to arbitration in Paris, and concerns questions of French law. FCL commenced this action seeking security for its claims in the Paris arbitration. On July 11, 2007, the Honorable Kenneth M. Karas, District Judge, issued an *ex parte* order, pursuant to Rule B of the Supplemental Rules, authorizing the attachment of up to $14,321,644.30 of Transfield's assets. Subsequently, on September 13, 2007, the undersigned issued an amended order,

---

[1] On October 25, 2007, the Court granted plaintiff's *ex parte* application to issue an amended order pursuant to Rule B of the Supplemental Rules authorizing attachment of Transfield ER Ltd.'s assets and to file a first amended complaint adding that company as a defendant in this action. Because Transfield ER Ltd. was not a party at the time Transfield filed the instant motion for countersecurity, the Court refers to the motion as Transfield's alone.

pursuant to Rule B of the Supplemental Rules, authorizing the attachment of up to $15,101,338.00 of Transfield's assets.  During oral argument regarding Transfield's motion, FCL represented to this Court that it had attached assets of defendants up to the full amount permitted by the Court.

On October 5, 2007, Transfield filed an answer and a counterclaim against FCL, asserting that FCL breached the COA, and seeking damages and countersecurity in the amount of $5,210,280.00.  (Answer at 11.)  Specifically, Transfield alleges that FCL's failure to employ Transfield's vessels breached the COA, and forced Transfield to obtain "alternative employment" for its vessels in locations other than those specified under the COA. (Counterclaim ¶ 6.)  It is undisputed that the daily payments to Transfield under the "alternative" shipping contracts were significantly higher than they would have been under the COA.  (*Id.*) Nevertheless, Transfield asserts that, upon FCL's breach of the COA, Transfield lost the opportunity to complete certain "positioning voyages" pursuant to the COA — that is, voyages terminating in Northern European ports, which, following their completion, would "enable [Transfield] . . . to charter the vessels [in] the more lucrative North Atlantic market." (*Id.*; *see* Purcell Decl. ¶ 9.)  Thus, because FCL's breach of the COA allegedly denied Transfield its expected opportunity to complete "positioning voyages", Transfield now seeks to recover lost profits in the amount equal to what it would have earned by chartering its vessels in the North Atlantic market upon completion of the voyages under the COA.

## II. Legal Standard

Rule E(7)(a) provides that:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must

>give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise.

"[T]he final clause of the quoted language makes clear that the trial court possesses broad discretion in deciding whether to order countersecurity." *Result Shipping Co. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 399 (2d Cir. 1995). "In exercising this discretion, the court should be guided primarily by two principles": (1) the purpose of Rule E(7), which is "to place the parties on an equality as regards security"; and (2) the countervailing need to avoid "impos[ing] burdensome costs on a plaintiff that might prevent it from bringing suit." *Id.* at 399-400 (internal quotation marks and citations omitted). Notably, the first principle "usually favors granting countersecurity when a defendant whose property has been attached asserts *non-frivolous* counterclaims growing out of the same transaction, especially when the counterclaimant could have proceeded *in rem* or *quasi in rem* in an independent suit." *Id.* at 399 (emphasis added).

### III. Discussion

Here, FCL concedes that Transfield has satisfied the elements of Rule E(7) — namely, that Transfield has asserted a counterclaim arising out of the same transaction as the initial complaint, and has previously given security in this action. *See* Rule E(7). Nevertheless, FCL argues that Transfield is not entitled to countersecurity because its counterclaim cannot, as a matter of law, support an award of damages under French law. Specifically, FCL asserts that, because Transfield "has introduced no proof" that its alleged damages relating to "positioning voyages" were foreseeable at the time the parties entered into the COA, Transfield's "damages claim" is "speculative," and, thus, Transfield is "not entitled to counter-security." (FCL's Opp. Br. at 2.)

The Court rejects FCL's argument because it calls for this Court to conduct an intensive inquiry into the merits of Transfield's counterclaim — an inquiry that is contrary to the relevant authority in this Circuit, and in other circuits, applying Rule E(7). The Rule E(7) standard set forth by the Second Circuit in *Result Shipping* provides for a severely *limited* inquiry into the merits of the counterclaim at issue. Specifically, with regard to the merits of a movant's counterclaim, the court in *Result Shipping* simply stated that Rule E(7) "favors granting countersecurity when a defendant . . . asserts *non-frivolous* counterclaims . . . ." *Result Shipping*, 56 F.3d at 399.

Similarly, the overwhelming weight of authority among courts in this Circuit, and in other circuits, favors the view that, with regard to the merits of the movant's counterclaim, the court should do no more than screen out "totally frivolous claims" by the counterclaimant upon review of a motion under Rule E(7). *Finecom Shipping Ltd. v. Multi Trade Enterp. AG*, No. 05 Civ. 6695 (GEL), 2005 WL 2838611, at *1 (S.D.N.Y. Oct. 25, 2005) (Lynch, J.); *see Starboard Venture Shipping, Inc. v. Casinomar Transp., Inc.*, No. 93 Civ. 0644 (SS), 1993 WL 464686, at *6 (S .D.N.Y. Nov. 9, 1993) ("[C]ourts have considered whether counterclaims might be frivolous before deciding to order countersecurity.") (Sotomayor, J.); *see also Afram Lines Int'l, Inc. v. M/V Capetan Yiannis*, 905 F.2d 347, 350 (11th Cir. 1990) ("[T]he court should consider, if applicable, . . . the extent to which the counterclaim may be deemed frivolous.") (internal citations omitted); *Titan Nav., Inc. v. Timsco, Inc.*, 808 F.2d 400, 404 (5th Cir. 1987) ("[T]he court should not require countersecurity where the counterclaim is frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant."). As guided by the Second Circuit's holding in *Result Shipping,* this Court adopts the majority view and, thus, joins in Judge Lynch's

observation — in a case where he found a counterclaim to be "non-frivolous" and ordered security under Rule E(7) — that :

> [A] court's ability to understand the merits of a dispute at an early stage is limited, and courts should be reluctant to prejudge the merits of claims based essentially on the pleadings and a sparse record consisting of a few documents, in advance of any discovery.

2005 WL 2838611, at *1.

Here, FCL asserts that Transfield should be denied countersecurity on the ground that it "has failed to sufficiently support its counter-claim in the following respects": (1) failing "to attach any documents" to the counterclaim; (2) submitting a declaration "executed by counsel, not Transfield"; (3) failing to submit a "declaration from a broker or market expert assessing the rates [in the North Atlantic shipping market] at the time of [FCL's] alleged breach"; and (4) failing to proffer testimony from an "expert on French law . . . to assess issues under the law." (FCL's Opp. Br. at 8.)  These assertions make clear that FCL seeks to have this Court engage in an intensive review of the merits of Transfield's counterclaim — an inquiry that, as discussed *supra*, has no basis in the text of Rule E(7) or relevant case law in this Circuit.  Accordingly, the Court declines to prejudge the merits of Transfield's claim for damages under French law, at least where the parties have not engaged in *any* discovery and the Court has only a sparse record to review.  Instead, for the following reasons, the Court finds that Transfield has demonstrated its entitlement to security pursuant to the minimal requirements of Rule E(7) and the two principles identified by the Second Circuit in *Result Shipping*.

The Court finds that the first principle identified by the court in *Result Shipping* — that security should be ordered where it furthers Rule E(7)'s purpose of "plac[ing] the parties on an

equality as regards security" — strongly favors granting Transfield's motion. *Result Shipping*, 56 F.3d at 399 (internal quotation marks and citations omitted). It is beyond doubt that Transfield's property has previously been attached in the amount of $15,101,338.00, that Transfield's counterclaim arises out of the same transaction at issue in FCL's complaint, and that Transfield could have asserted its claim in an independent suit against FCL. *See id.* at 399-400. In addition, it is clear that Transfield's counterclaim is "non-frivolous." *Id.* at 400. Specifically, based on the pleadings submitted in this action, Transfield presents a colorable claim for damages arising from FCL's alleged breach of the COA and the consequent lost opportunity for Transfield to complete "positioning voyages" under the COA. As discussed *supra*, FCL has failed to present any authority, and this Court's own research has not revealed any support, for the proposition that the Court should conduct a more searching inquiry into the merits of this claim, including the issue of whether Transfield's alleged damages were sufficiently foreseeable to support a damages award under French law. Thus, the Court finds that the first *Result Shipping* principle strongly favors granting countersecurity in this action in order to avoid the "potential injustice of requiring [Transfield] to post security without affording reciprocal protection" to Transfield for its own non-frivolous claim.[2] *Id.* at 400.

---

[2] FCL also argues that Transfield's motion for countersecurity should be denied because FCL has "sustained tangible out of pocket losses" due to Transfield's alleged breach, but Transfield, by contrast, has merely "claimed that it should have profited even more than it did" due to FCL's alleged breach. (FCL's Opp. Br. at 9.) The Court rejects this purported distinction as a basis for denying Transfield's motion. FCL fails to cite *any* authority for the proposition that, upon consideration of a Rule E(7) motion, the Court should accord greater weight to one party's "out of pocket" damages than to another party's lost profits damages. Indeed, even assuming *arguendo* that FCL has accurately characterized the parties' respective damages claims, the Court finds that the distinction identified by FCL is immaterial to the Court's inquiry under Rule E(7). It is self-evident that both "out of pocket" and lost profits damages merit consideration under the equitable analysis that this Court must undertake in reviewing a motion for countersecurity under Rule E(7).

Furthermore, the second principle identified by the court in *Result Shipping* — that countersecurity "is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit" — does not weigh against granting Transfield's motion. *Id.* FCL devotes less than one sentence in its opposition papers to addressing this principle (*see* FCL's Opp. Br. at 8),[3] and the Court similarly finds that this principle merits only a brief discussion. FCL has failed to present any evidence, or even to argue, that the amount of countersecurity requested by Transfield would be so "burdensome" that it might "prevent" FCL from maintaining this action. *Results Shipping*, 56 F.3d at 400; *see, e.g., Dongbu Exp. Co., Ltd. v. Navios Corp.*, 944 F. Supp. 235, 239 (S.D.N.Y. 1996) (granting defendant's motion for countersecurity where, *inter alia*, the plaintiff had "not asserted that granting such security would be so burdensome as to prevent [it] from bringing suit"). Therefore, the Court finds that this principle does not weigh against the Court, in its discretion, ordering FCL to post security on Transfield's counterclaim.

As to the amount of countersecurity, the Court finds that FCL should post security in the full amount requested by Transfield — namely, $5,210,280.00. (*See* Counterclaim ¶ 7.) Generally, under Rule E(7), the plaintiff should be ordered "to provide [counter]security in the same amount that it had succeeded in attaching and [to] provide additional security matching any additional property it should subsequently succeed in attaching." *Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A.*, No. 06 Civ. 15299 (PKL), 2007 WL 646329, at *2 (S.D.N.Y. Feb 26, 2007) (citing *Finecom*, 2005 WL 2838611, at *2). In this case, because FCL has already attached property in an amount far exceeding that sought to be attached by Transfield,

---

[3] Specifically, FCL asserts that "although FCL certainly would find the imposition of over $5 million in counter-security costs burdensome, the key inquiry concerns [the equality principle discussed *supra*.]" (FCL's Opp. Br. at 8.)

the equitable principles that underlie Rule E(7) are best served by ordering FCL to post security in the amount of $5,210,280.00.

FCL argues that the amount of countersecurity requested by Transfield is the product of "incorrect market data" and, therefore, should be reduced. (FCL's Opp. Br. at 18.) Specifically, according to FCL, Transfield's damage calculations fail to take into account "known and established port congestion" in Australia, which, notwithstanding FCL's alleged breach of the COA, would have prevented Transfield from reaching the North Atlantic shipping market in time to take advantage of the favorable market rates used by Transfield in calculating its alleged damages. (*Id.*)

The Court rejects this argument, as it calls for the very sort of fact-intensive inquiry that, as discussed *supra*, is inappropriate upon consideration of a motion under Rule E(7). Furthermore, the Court notes that, in the analogous context of a Rule B attachment, it is well-settled that the moving party need not "prove its damages with 'exactitude'" prior to obtaining an attachment. *Ronda Ship Management Inc. v. Doha Asian Games Organising Comm.*, — F. Supp. 2d — , 2007 WL 2812897, at *5 (S.D.N.Y. 2007) (quoting *Dongbu Express Co., Ltd. v. Navios Corp.*, 944 F. Supp. 235, 237 (S.D.N.Y. 1996)). FCL has failed to provide any authority that provides for a more exacting standard where, as here, a party seeks to attach another party's assets under Rule E(7).

Thus, because Transfield has offered a plausible estimation of its lost profits damages in its Counterclaim, the Court declines FCL's request to delve into the intricacies of Australian port congestion and/or to weigh the relative strength of the parties' evidence relating to the speed with which Transfield's vessels could have travelled from Australia to Northern Europe in May 2007. Rather than scouring the record for evidence undermining Transfield's plausible

damages calculation, the Court exercises its discretion under Rule E(7) to grant Transfield's request for full security on its counterclaim.

## IV. Conclusion

For the foregoing reasons, Transfield's motion for security under Rule E(7) is GRANTED in its entirety. FCL is hereby ordered to post a bond or other satisfactory security in the amount of $5,210,280.00. If FCL fails to provide such security within ten business days of the date of this Order, the attachment previously ordered at FCL's behest will be vacated.

SO ORDERED.

Dated:   New York, New York
         November 16, 2007

                                    _____
                                    RICHARD J. SULLIVAN
                                    UNITED STATES DISTRICT JUDGE