Michael J. Frevola
Christopher R. Nolan
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York  10007-3189
Tel.:   (212) 513-3200
Fax:    (212) 385-9010
E-mail:  michael.frevola@hklaw.com
         chris.nolan@hklaw.com
         lissa.schaupp@hklaw.com

Attorneys for Plaintiff,
*Front Carriers Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRONT CARRIERS LTD.,

                    Plaintiff,

        -against-

TRANSFIELD ER CAPE LTD. and
TRANSFIELD ER LIMITED,

                    Defendant.

---

07 Civ. 6333 (RJS)

**AFFIDAVIT IN SUPPORT OF
PLAINTIFF'S RESPONSE TO
<u>ORDER TO SHOW CAUSE</u>**

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF NEW YORK       )

CHRISTOPHER R. NOLAN, being duly sworn, deposes and says:

1.      I am associated with the firm of Holland & Knight LLP, attorneys for plaintiff

Front Carriers Ltd. ("Plaintiff" or "Front Carriers"), and I am duly admitted to practice before the

United States District Court for the Southern District of New York.

2.    I am familiar with the facts and circumstances underlying this dispute and I am submit this affidavit in support of Plaintiff's Response to the Court's Order dated October 20, 2009.

3.    This affidavit encompasses the following: (1) relevant portions of the procedural history of this case; (2) details of the restraints in this action pursuant to the order of attachment issued by this Court, (3) the parties' escrow agreements that govern the disposition of the funds previously attached in this case, and (4) my understanding of the practice of garnishee banks to place restrained funds in a segregated maritime suspense account.

## FCL's Restraints in this Matter

4.    On July 11, 2007, the Honorable Kenneth M. Karas, then assigned to this matter, executed an Order for Issuance of a Writ of Attachment and Garnishment in the amount of $14,321,644.30 ("First Order") and an Order Appointing Persons to Serve Process. The process servers appointed by Holland & Knight LLP in accordance with this Court's Order Appointing Person to Serve Process, dated July 11, 2007, began serving the First Order and Writ of Attachment on garnishees on July 11, 2007.

5.    On July 13, 2007, we began receiving notices from garnishees by telephone, email, and/or otherwise that wire transfers had been restrained in the name of Defendant Transfield ER Cape Ltd. True and correct copies of the written notices provided by the garnishees are annexed as Exhibits 1-6. The limited details for each of the restraints are as follows:

| Ex | Date Funds Restrained | Date Garnishee Confirmed Restraint | Garnishee | Amount Restrained | Type of Restraint |
|---|---|---|---|---|---|
| 1 | 7/13/07 | 7/13/07 | HSBC Bank USA, N.A. | $1,054,712.57 | "wire payment for the benefit of Transfield ER Cape Ltd." |
| 2 | 7/16/07 | 7/25/07 | JPMorgan Chase | $1,011,375.00 | "funds ... being wire transferred through the Bank to Transfield ER Cape Ltd." |
| 3 | 7/26/07 | 7/26/07 | JPMorgan Chase | $3,478.31 | "funds ... being wire transferred through the Bank to Transfield ER Cape Ltd." |
| 4 | 8/13/07 | 8/14/07 | Bank of America | $436,692.60 | "wire transaction ... and the Beneficiary is: Transfield ER Cape Limited" at the originator's bank |
| 5 | 8/15/07 | 8/16/07 | HSBC Bank USA, N.A. | $721,392.86 | "wire payment for the benefit of Transfield ER Cape Ltd." |
| 6 | 8/28/07 | 8/30/07 | HSBC Bank USA, N.A. | $892,265.63 | "wire payment for the benefit of Transfield ER Cape Ltd." |

In sum, we received notice of six wire transfers restrained by garnishees pursuant to the First Order. The total amount restrained pursuant to the First Order was $4,119,916.37.

6.    On September 12, 2007, this Court issued an Order for Issuance of an Amended Writ of Attachment and Garnishment in the amount of $15,101,338 (the "Second Order"). The process servers appointed began serving the Second Order and Writ of Attachment on garnishees on September 14, 2007.

7.    On October 12, 2007, we received notices from garnishees that wire transfers had been restrained pursuant to the Second Order. True and correct copies of the notices provided by

the garnishees are annexed as Exhibits 7-8.  We received limited details for each of the restraints as follows:

| Ex | Date Funds Restrained | Date Garnishee Confirmed Restraint | Garnishee | Amount Restrained | Type of Restraint |
|----|-----------------------|------------------------------------|-----------|-------------------|-------------------|
| 7 | 10/12/07 | 10/12/07 | HSBC Bank USA, N.A. | $1,227,937.50 | "wire payment for the benefit of Transfield ER Cape Ltd." |
| 8 | 10/12/07 | 10/12/07 | HSBC Bank USA., N.A. | $1,588,875.00 | "wire payment for the benefit of Transfield ER Cape Ltd." |

The total amount restrained pursuant to the Second Order was $2,816,812.50.

8.      As is described in the accompanying Declaration of Lasse Brautaset, on October 24, 2007 Front Carriers initiated arbitration against Transfield in Paris pursuant to the terms of the parties' contract of affreighment.  At this juncture, Front Carriers had obtained approximately US$6.9 million in security pursuant to Rule B for its claims against Transfield.

9.      On October 25, 2007, this Court signed a Second Amended Order for Issuance of a Writ of Attachment and Garnishment (the "Third Order").   The Third Order named Transfield ER Limited ("Transfield ER") as a second defendant.  Front Carrier's claims against Transfield ER as set forth in the Second Amended Complaint are based on alter ego and/or "paying agent" liability.  The process servers appointed began serving the Third Order and Writ of Attachment on October 26, 2007.

10.      On November 7, 2007, we received two notices that wire transfers had been restrained pursuant to the Third Order.  True and correct copies of the notices provided by the

garnishees are annexed as Exhibits 9-10. We received limited details for each of the restraints as follows:

| Ex | Date Funds Restrained | Date Garnishee Confirmed Restraint | Garnishee | Amount Restrained | Type of Restraint |
|----|----|----|----|----|----|
| 9 | 11/06/07 | 11/07/07 | Citibank | $3,629,936.70 | "payment for the benefit of Transfield ER Limited" |
| 10 | 11/07/07 | 11/07/07 | Bank of America | $4,550,810.27 | "Court Order for Transfield ER Limited" |

All told two wire restraints occurred pursuant to the Third Order. The total amount restrained pursuant to the Third Order was $8,180,746.97.

11.    On November 7, 2007, we issued a cease and desist notice to garnishee banks, with final service of process occurring on November 8, 2007.

12.    On November 16, 2007, the Court granted Defendants' motion for countersecurity in the amount of US$5,210,280. Front Carriers placed US$5,210,280 in funds into an interest-bearing account at JPMorgan Chase Bank in accordance with the Court's November 16, 2007 Order ("Counter-security Account").

## The Parties' Escrow Agreements

13.    On December 28, 2007 Front Carriers and Transfield entered into an escrow agreement that provided for the transfer of US$5,210,280 of Front Carrier's funds and US$15,101, 338 of Transfield's funds into an interest-bearing account at a mutually agreed bank (the "Parties' Escrow Agreement"). A true and correct copy of the Parties' Escrow Agreement is annexed hereto as Exhibit 11.

14.     Subsequently, on January 23, 2009 Front Carriers and Transfield entered into a Basic Three Party Escrow Agreement with JPMorgan Chase Bank N.A. acting as escrow agent whereby Transfield agreed to deposit the sum of US$15,101,338 and Front Carriers agreed to deposit the sum of US$5,210,280 into an interest-bearing account (the "Bank Escrow Agreement"). A true and correct copy of the Bank Escrow Agreement is annexed hereto as Exhibit 12.

15.     On January 30, 2008, this Court signed a Consent Order directing garnishees holding the monies of Transfield in this matter to deposit a total of US$15,101,339 into an interest-bearing escrow account at JPMorgan and for Front Carrier's funds in the Counter-security Account to be transferred into an interest-bearing escrow account at JPMorgan in accordance with the terms of the Parties' Escrow Agreement and the Bank Escrow Agreement.

## Garnishees' Use of Suspense Accounts

16.     FCL has served interrogatories on garnishee banks in this action where funds had been restrained, requesting *inter alia* information regarding the restraints in this case and the manner in which the funds were handled after restraint. FCL had not received responses yet to its interrogatories. Generally, in connection with Rule B matters, I understand that it is the practice of garnishee banks to place restrained funds in a maritime suspense account.

17.     For example, it appears that Bank of America, N.A. follows this practice, maintaining Rule B attached funds in a "Maritime Order of Attachment Acct." This information was obtained in connection with a matter assigned to Judge Chin, *Cosco Logistics (Dalian) Co. Ltd. v. Beita Iron & Steel Group Import & Export Co. Ltd.*, 08 Civ. 7988 (DC) ("Cosco Matter").

18.    Holland & Knight LLP acted for Defendant Beita Iron & Steel Group Import & Export Co. Ltd. ("Beita") in the Cosco Matter and with counsel for Plaintiff, submitted a Stipulation and Order which addressed the release and transfer of $381,311.97 restrained. A true and correct copy of the executed Stipulation and Order dated November 25, 2008 is annexed hereto as Exhibit 13.

19.    Item 4 of the Stipulation and Order provides that $20,666.67 at the Bank of America would be transferred to Defendant Beita, with the remittance details to be provided by Beita's counsel, Holland & Knight LLP.

20.    Subsequently, Holland & Knight LLP provided a copy of the executed Stipulation and Order to Bank of America, N.A., along with wire instructions for the transfer of $20,666.67 to Holland & Knight LLP's account at JP Morgan Chase.

21.    JP Morgan Chase prepared a "Transaction Detail Report" when the $20,666.67 was received from the Bank of America, N.A. A true and correct copy, of the Transaction Detail Report evidencing Holland & Knight LLP's receipt of the *Beita* funds, with certain banking information redacted, is annexed hereto as Exhibit 14.

22.    On the "transaction detail report," in the section stating the originator of the wire transfer, "MARITIME ORDER OF ATTACHMENT ACCT" and the address for the Bank of America, N.A. are listed.

23.    Concerning HSBC Bank USA, N.A.'s practices as to how it maintains an EFT after it is restrained in response to a maritime order and writ of attachment, I was informed by an HSBC representative on October 23, 2009 that all funds restrained in connection with Rule B

attachments and garnishments are maintained in their own non-interest bearing account entitled a "Maritime Holdover" account.

24.    Concerning Citibank N.A.'s practices as to how it maintains an EFT after it is restrained in response to a maritime order and writ of attachment, my colleague Michael Frevola, Esq., spoke with a representative of Citibank N.A. last week who confirmed that the bank places all funds restrained pursuant to maritime attachment orders into a segregated suspense account.

25.    A true and correct copy of an order to show cause issued on October 21, 2009 by the Honorable Victor Marrero in *Transfield ER Cape Ltd. v. Crownland Int'l Co. Ltd.*, 08 Civ. 8602 (VM), is annexed hereto as Exhibit 15.

26.    A true and correct of the October 28, 2009 letter submitted by Transfield ER Cape Ltd. in response to Judge Marrero's order to show cause, along with Judge Marrero's Order dated October 28, 2009, written on Transfield ER Cape Ltd.'s letter, is annexed hereto as Exhibit 16.

27.    A true and correct copy of the most recent account statements prepared by JP Morgan Chase, in connection with the escrow accounts described in paragraphs 13 and 14 above, are annexed hereto as Exhibit 17.

28.    A true and correct copy of a "Wire Transfer Agreement" for the Federal Home Loan Bank of New York, dated December 2008, obtained from the Internet, is annexed hereto as Exhibit 18.

_____
Christopher R. Nolan

Sworn to before me this
16th day of November, 2009

_____
Notary Public

Elvin Ramos
Notary Public, State of New York
NO. 01RA4870243
Qualified in Queens County
Certificate filed in New York County
Commission Expires September 2, 2010

# EXHIBIT 1



July 13, 2007

Michael J. Frevola
Holland & Knight LLP
195 Broadway
New York, New 10007

Dear Mr. Frevola:

Re:    Writ of Maritime Attachment and Garnishment
       Against: Transfield ER Cape Ltd
       Court Index No. 07 CIV 6333

This will confirm our recent telephone conversation where we advised you that HSBC Bank USA, N.A. has captured a wire payment for the benefit of Transfield ER Cape Ltd in response to the captioned Writ of Maritime Attachment and Garnishment. You directed HSBC Bank USA, N.A. to hold this payment. The payment in the amount of $1,054,712.57 is being held until further notice from you.

If I can be of further assistance, please contact me at (716) 841-2639.

Sincerely,

John Cyna
Legal Assistant
Legal Processing Department

# EXHIBIT 2

# RAWLE & HENDERSON LLP



CARL D. BUCHHOLZ, III
215-575-4235
cbuchholz@rawle.com

KEVIN L. MCGEE
215-575-4431
Kmcgee@rawle.com

THE NATION'S OLDEST LAW OFFICES
ESTABLISHED 1783

WWW.RAWLE.COM

THE WIDENER BUILDING
ONE SOUTH PENN SQUARE
PHILADELPHIA, PA 19107

TELEPHONE:(215) 575-4200
FACSIMILE:(215) 563-2583

July 25, 2007

**Via Email: Michael.Frevola@hklaw.com**
Michael J. Frevola, Esquire
Holland & Knight, LLP
195 Broadway
New York, NY 10007

Re:  **Front Carriers Ltd. v. Transfield ER Cape Ltd.**
**Docket No.: SDNY: 07-6333**
**Our File No.: 444,218-355**

Dear Mr. Frevola:

Pursuant to the writ of maritime attachment served by you on behalf of Front Carriers Ltd. on JPMorgan Chase, funds in the amount of $1,011,375.00 being wire transferred through the Bank to Transfield ER Cape Ltd., were restrained on July 16, 2007.

Pursuant to Local Admiralty Rule B.2 of the Local Rules of Civil Procedure of the United States District Court for the Southern District of New York, please notify defendant of the restraint of these funds and provide the undersigned with confirmation of the notification.

If you have any additional questions regarding the restrained funds, please give me a call.

Very truly yours,

RAWLE & HENDERSON LLP

By:
       Carl D. Buchholz, III
       Kevin L. McGee
CDB/KLM/kg
cc:    Mr. Norberto B. Bonga - **Email**: Norberto.B.Bonga@jpmchase.com
       Ms. Johnette Reid - **Email**: Johnette.Reid@jpmchase.com
       Ms. Teresa Goldberg, Esquire – **Via Email**: Teresa.j.Goldberg@chase.com

2117766-1

# EXHIBIT 3

# R A W L E & H E N D E R S O N LLP



CARL D. BUCHHOLZ, III
215-575-4235
CBUCHHOLZ@rawle.com

LILIAN PHILIPOSIAN
215-575-4237
l.PHILIPOSIAN@@rawle.com

THE NATION'S OLDEST LAW OFFICES
ESTABLISHED 1783

WWW.RAWLE.COM

THE WIDENER BUILDING
ONE SOUTH PENN SQUARE
PHILADELPHIA, PA 19107

TELEPHONE:(215) 575-4200
FACSIMILE:(215) 563-2583

July 26, 2007

**Via Email: Michael.Frevola@hklaw.com**
Michael J. Frevola, Esquire
Holland & Knight, LLP
195 Broadway
New York, NY 10007

Re:   **Front Carriers Ltd. v. Transfield ER Cape Ltd.**
      **Docket No.: SDNY: 07-6333**
      **Our File No.: 444,218-355**

Dear Mr. Frevola:

Pursuant to the writ of maritime attachment served by you on behalf of Front Carriers Ltd. on JPMorgan Chase, funds in the amount of $3,478.31 being wire transferred through the Bank to Transfield ER Cape Ltd., were restrained on July 26, 2007.

Pursuant to Local Admiralty Rule B.2 of the Local Rules of Civil Procedure of the United States District Court for the Southern District of New York, please notify defendant of the restraint of these funds and provide the undersigned with confirmation of the notification.

If you have any additional questions regarding the restrained funds, please give me a call.

Very truly yours,

RAWLE & HENDERSON LLP

By:

       Carl D. Buchholz, III
       Lilian V. Philiposian
CDB/LVP/kg
cc:   Mr. Norberto B. Bonga - **Email**: Norberto.B.Bonga@jpmchase.com
      Ms. Johnette Reid - **Email**: Johnette.Reid@jpmchase.com
      Ms. Teresa Goldberg, Esquire – **Via Email**: Teresa.j.Goldberg@chase.com

2118535-1

# EXHIBIT 4

**Daly, Blythe (NYC - X73570)**

| | |
|---|---|
| **From:** | Frevola, Michael (NYC - X73516) |
| **Sent:** | Friday, October 23, 2009 6:36 PM |
| **To:** | Frevola, Michael (NYC - X73516) |
| **Subject:** | FW: trn: 20070813-00045732    USD 436,692.60 (COURT ORDER FOR TRANSFIELD ER CAPE) |
| **Importance:** | High |
| **Sensitivity:** | Confidential |
| **Attachments:** | Swanson, Sarah L.vcf; Swanson, Sarah L.vcf |

  

Swanson, Sarah      Swanson, Sarah
L.vcf (514 B)       L.vcf (514 B)

```
                    -----Original Message-----
From: Swanson, Sarah L -Legal [mailto:sarah.l.swanson@bankofamerica.com]
Sent: Tuesday, August 14, 2007 11:28 AM
To: Frevola, Michael (NYC - X73516); Honan, Bill (NYC - X73300)
Cc: Swanson, Sarah L -Legal
Subject: FW: trn: 20070813-00045732 USD 436,692.60 (COURT ORDER FOR TRANSFIELD ER CAPE)
Importance: High
Sensitivity: Confidential

  8-14-207

Dear Mike,

Pursuant to our phone conversation, attached is the wire transaction information. Thank
you for confirming that this is indeed your party defendant.  Please note that the
Originator is: RIO TINTO SHIPPING PTY LTD; and the Beneficiary is: TRANSFIELD ER CAPE
LIMITED.

Kindly provide a response email confirming that you have advised your defendant that BANA
is sequestering these funds per your directive.

Warmly,

Sarah L. (Goddard) Swanson, NCCP
Maritime Coordinator
NC Notary Public

Phone:  704.386.9334
Fax:  704.719.8478
Email:  sarah.l.swanson@bankofamerica.com


Bank of America
Legal Department - GCIB - GTS & GWIM
Mail Code:  NC1-002-29-01
Bank of America Plaza
101 S. Tryon Street - 30th Floor
Charlotte, NC  28255-0001


This transmission, together with any attachments, is confidential, intended for only the
named recipient(s) and may contain information that is privileged, attorney work product
or exempt from disclosure under applicable law. The sender does not waive any privilege or
confidentiality in the event of an inadvertent transmission to an unauthorized recipient.
In the event of such a transmission, you are hereby notified that any use, dissemination,
distribution or copying of this message, or any attachment, is strictly prohibited.
```

1

If you have received this message in error, please immediately contact the sender and
delete this e-mail and any attachments from your computer. Thank you.


-----Original Message-----
From:
Sent: Monday, August 13, 2007
To: Swanson, Sarah L -Legal;
Subject: FW: trn: 20070813-00045732 USD 436,692.60 (COURT ORDER FOR TRANSFIELD ER CAPE)
trn_45732.txt

.

```
< < < AIX VERSION 1.2 > > >


RCVD FROM CRA SHIPPING PTY LTD   (WANDA)1ST FLOOR, BUILDING 2
SENDER'S DDA #
                                         *** Message: TESTED. ***


TRN REF #: 20070813-00045732
---------------------------------------------------------------------
--------
       **** MESSAGE ENVELOPE ****             ( Bank : SFO )

                                        SND DATE: 07/08/13
SRC:WAN CALLER:                         EXT:

RPT#         AMT:436,692.60        CUR:USD
TRDR#
TEST: {} DUE:                   TYP:FTR/    FNDS:S CHG:DB:N CD:N
COM:X CBL:N
---------------------------------------------------------------------
--------
DBT D/            /              CDT P/                  ADV:CHP
DEBIT VAL: 07/08/13             CREDIT VAL: 07/08/13
RIO TINTO SHIPPING PTY LTD      HSBC BANK USA
MS SHARON STEWART, COM'L MGR    452 FIFTH AVEUNE
1ST FL BLDG 2, 4 RIVERSIDE QUAY NEW YORK, NEW YORK
SOUTHBANK VIC 3006 AUSTRALIA    BNF BANK:S/
SEND:
WIR:Y
CRA SHIPPING PTY LTD   (WANDA)  HONGKONG AND SHANGHAI BANKING
CORP.
1ST FLOOR, BUILDING 2           P.O. BOX 64
4 RIVERSIDE QUAY                HONG KONG
SOUTHBANK VIC 3006 AUSTRALIA    BNF:/           CHG: BK?N
SNDR REF NUM:C SUMMIT           TRANSFIELD ER CAPE LIMITED
REF NUM:070813FWHA1747WW
ORIG:
RIO TINTO SHIPPING PTY LTD      ORIG TO BNF INFO:
LEVEL 35, 55 COLLINS STREET     C SUMMIT - 2ND HIRE
MELBOURNE
VIC 3000, AUSTRALIA



                  Message Text Unknown Message Format


        XX MTNA
        .FWHA MTP:100



        {STX}
        YZYZ
        FROM:/
             RIO TINTO SHIPPING PTY LTD
             LEVEL 35, 55 COLLINS STREET
             MELBOURNE
             VIC 3000, AUSTRALIA
        TO:  /
             BANK OF AMERICA, BRANCH 6290
             CONCORD, CALIFORNIA USA
        DATE:070813

        ::100 CUSTOMER TRANSFER
        PLEASE PAY

        :15 TEST KEY:{}
```

```
:20 SENDERS REF:C SUMMIT
:30 VALUE DATE:070813 13AUG07
:32 AMOUNT:
USD 436,692.60 US DOLLAR

:50 ORIGINATOR:
RIO TINTO SHIPPING PTY LTD
LEVEL 35, 55 COLLINS STREET
MELBOURNE
VIC 3000, AUSTRALIA
:53D REIMBURSEMENT:/
RIO TINTO SHIPPING PTY LTD
LEVEL 35, 55 COLLINS STREET
MELBOURNE
VIC 3000, AUSTRALIA
:56D INTERMEDIARY:/
HSBC BANK USA
NEW YORK
USA
:57D PAY THRU:/
HONGKONG SHANGHAI BANKING CORP.
SUN HUNG KAI CENTER BRANCH
HONG KONG
:59 BENEFICIARY:
TRANSFIELD ER CAPE LIMITED
:70 BENEF INFO:
C SUMMIT - 2ND HIRE
{ETX}
AMI:
GMD8719
```

# EXHIBIT 5



August 16, 2007

Michael J. Frevola
Holland & Knight LLP
195 Broadway
New York, New 10007

Dear Mr. Frevola:

Re:   Writ of Maritime Attachment and Garnishment
      Against: Transfield ER Cape Ltd
      Court Index No. 07 CIV 6333

This will confirm our recent telephone conversation where we advised you that HSBC Bank USA, N.A. has captured a wire payment for the benefit of Transfield ER Cape Ltd in response to the captioned Writ of Maritime Attachment and Garnishment. You directed HSBC Bank USA, N.A. to hold this payment. The payment in the amount of $721,392.86 is being held until further notice from you.

If I can be of further assistance, please contact me at (716) 841-2639.

Sincerely,

John Cyna
Legal Assistant
Legal Processing Department

**HSBC Bank USA, National Association**
One HSBC Center, Buffalo, NY 14203

# EXHIBIT 6



August 30, 2007

William Honan
Holland & Knight LLP
195 Broadway
New York, New 10007

Dear Mr. Honan:

Re:    Writ of Maritime Attachment and Garnishment
       Against: Transfield ER Cape Ltd
       Court Index No. 07 CIV 6333

This will confirm our recent telephone conversation where we advised you that HSBC Bank USA, N.A. has captured a wire payment for the benefit of Transfield ER Cape Ltd in response to the captioned Writ of Maritime Attachment and Garnishment. You directed HSBC Bank USA, N.A. to hold this payment. The payment in the amount of $892,265.63 is being held until further notice from you.

If I can be of further assistance, please contact me at (716) 841-2639.

Sincerely,

John Cyna
Legal Assistant
Legal Processing Department

HSBC Bank USA, National Association
One HSBC Center, Buffalo, NY 14203

# EXHIBIT 7



October 12, 2007

Michael J. Frevola
Holland & Knight LLP
195 Broadway
New York, New 10007

Dear Mr. Frevola:

Re:   Writ of Maritime Attachment and Garnishment
       Against: Transfield ER Cape Ltd
       Court Index No. 07 CIV 6333

This will confirm our recent telephone conversation where we advised you that HSBC Bank USA, N.A. has captured a wire payment for the benefit of Transfield ER Cape Ltd in response to the captioned Writ of Maritime Attachment and Garnishment. You directed HSBC Bank USA, N.A. to hold this payment. The payment in the amount of $1,227,937.50 is being held until further notice from you.

If I can be of further assistance, please contact me at (716) 841-2639.

Sincerely,

John Cyna
Legal Assistant
Legal Processing Department

# EXHIBIT 8



October 12, 2007

Michael J. Frevola
Holland & Knight LLP
195 Broadway
New York, New 10007

Dear Mr. Frevola:

Re:    Writ of Maritime Attachment and Garnishment
       Against: Transfield ER Cape Ltd
       Court Index No. 07 CIV 6333

This will confirm our recent telephone conversation where we advised you that HSBC Bank USA, N.A. has captured a wire payment for the benefit of Transfield ER Cape Ltd in response to the captioned Writ of Maritime Attachment and Garnishment. You directed HSBC Bank USA, N.A. to hold this payment. The payment in the amount of $1,588,875.00 is being held until further notice from you.

If I can be of further assistance, please contact me at (716) 841-2639.

Sincerely,

John Cyna
Legal Assistant
Legal Processing Department

# EXHIBIT 9

## Daly, Blythe (NYC - X73570)

| | |
|---|---|
| **From:** | Frevola, Michael (NYC - X73516) |
| **Sent:** | Friday, October 23, 2009 6:53 PM |
| **To:** | Frevola, Michael (NYC - X73516) |
| **Subject:** | FW: NOTICE OF PAYMENT REC'D BY CITIBANK RE: Front Carriers v. Transfield ER Cape Ltd. 07-6333 Amended PMAG |

**Importance:** High

---

**From:** Mihalik, Mary B [mailto:mary.b.mihalik@citi.com]
**Sent:** Wednesday, November 07, 2007 9:56 AM
**To:** Ramos, Elvin (NYC - X73590); Frevola, Michael (NYC - X73516)
**Subject:** NOTICE OF PAYMENT REC'D BY CITIBANK RE: Front Carriers v. Transfield ER Cape Ltd. 07-6333 Amended PMAG
**Importance:** High

Mike,

Please be advised that on 06-Nov-07, Citibank received a payment for the benefit of **TRANSFIELD ER LIMITED** in the amount of $3,629,936.70.  We will continue to hold this payment until further notice from you.

NOTE TO FTN UNIT:  **Please continue to hold payment....thanks, mary**

CFS0531
NYCNA
.NYSIDCB 060201
TEST NR
{1:F01CITIUS33DXXX1370192602}{2:O1031501071106BKCHCNBJAXXX15755173680711060201N}{3:{108:RM014157}}{4:
:20:TT100B0034333/07
:23B:CRED
:32A:071106USD3629936,70
:50K:/00101526408091014
SINOSTEEL SHIPPING / FORWARDING
COMPANY (0152640)
NO.8 HAIDIAN ST.BJ
:57A:HSBCHKHHHKH
**:59:/499397248274**
**TRANSFIELD ER LIMITED**
:70:MV GRAND OCEAN-FREIGHT
:71A:SHA
-}{5:{MAC:AA664113}{CHK:497C9157FE38}{SAC}}
=11060201  FK43933

Mary B. Mihalik, AVP
Office of the General Counsel
Citi Markets & Banking
t: 1-212-816-6182
f: 1-866-560-0633
mary.b.mihalik@citi.com

---

**From:** elvin.ramos@hklaw.com [mailto:elvin.ramos@hklaw.com]
**Sent:** Monday, November 05, 2007 4:58 PM
**To:** aebpmag@zeklaw.com; Mihalik, Mary B [CMB-GCO]; jennifer.paley@ubs.com; maritime.attachments@wachovia.com;

reisert@navlaw.com; lynne.britt@us.fortis.com; lauren.maier@us.fortis.com; lpiechocki@mw-law.com; john.bardakjy@sgcib.com; joneill@cbkna.com; acole@cbkna.com.; pmag@zeklaw.com; pmag@americas.bnpparibas.com; nmorton@btmna.com; yroman@us.mufg.jp; yholland@us.mufg.jp; mildred.cuevas@leumiusa.com; carlos.cabrales@leumiusa.com; errickf@bpop.com; tdaniels@cbkna.com; Legal.Service@us.standardchartered.com

**Subject:** Front Carriers v. Transfield ER Cape Ltd. 07-6333 Amended PMAG


<<07_6333_second_amended_writ__Oct_26_2007_17_32_41_259.pdf>>
<<07_6333_second_amended_order__Oct_26_2007_17_31_14_513.pdf>>
<<07_6333_letter__Oct_26_2007_17_38_51_511.pdf>>

Dear Ladies and Gentlemen:

Attached are copies of the following documents:

1.    Second Amended Writ of Attachment and Garnishment issued on Oct. 26, 2007adding Transfield ER Limited as a    defendant;

2.    Second Amended Order for Issuance of an Amended Writ t of Attachment and        Garnishment

3.    Letter of Michael J. Frevola dated Oct 29, 2007;

It is our understanding that you will accept service of the above documents by email after the initial service. If you have any questions, please contact me at (212) 513-3590.

Best regards,

Elvin

11/15/2009

# EXHIBIT 10

## Daly, Blythe (NYC - X73570)

| | |
|---|---|
| **From:** | Frevola, Michael (NYC - X73516) |
| **Sent:** | Friday, October 23, 2009 7:00 PM |
| **To:** | Frevola, Michael (NYC - X73516) |
| **Subject:** | FW: trn: 20071107-00030557 USD 4,550,810.27 (COURT ORDER FOR TRANSFIELD ER LIMITED) |
| **Attachments:** | Swanson, Sarah L.vcf |

**From:** Swanson, Sarah L -Legal [mailto:sarah.l.swanson@bankofamerica.com]
**Sent:** Wednesday, November 07, 2007 5:52 PM
**To:** Frevola, Michael (NYC - X73516)
**Cc:** Swanson, Sarah L -Legal
**Subject:** FW: trn: 20071107-00030557 USD 4,550,810.27 (COURT ORDER FOR TRANSFIELD ER LIMITED)

*Sarah L. (Goddard) Swanson, NCCP*
*Maritime Coordinator*
*NC Notary Public*

Phone: 704.386.9334
Fax: 704.719.8478
Email: sarah.l.swanson@bankofamerica.com

Bank of America

Legal Department - GCIB - GTS & GWIM

Mail Code: NC1-002-29-01

Bank of America Plaza

101 S. Tryon Street - 30th Floor

Charlotte, NC 28255-0001

*This transmission, together with any attachments, is confidential, intended for only the named recipient(s) and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. The sender does not waive any privilege or confidentiality in the event of an inadvertent transmission to an unauthorized recipient. In the event of such a transmission, you are hereby notified that any use, dissemination, distribution or copying of this message, or any attachment, is strictly prohibited.*

*If you have received this message in error, please immediately contact the sender and delete this e-mail and any attachments from your computer. Thank you.*

<<Swanson, Sarah L.vcf>>

# EXHIBIT 11

## ESCROW AGREEMENT

WHEREAS, Front Carriers Ltd. ("Front Carriers") entered into a contract of affreightment with Transfield ER Cape Ltd. ("Transfield") on or about August 9, 2005 ("COA"), ("Front Carriers" and "Transfield" may be referred together as the "Parties" or individually as the "Party").

WHEREAS, disputes between the Parties have arisen under the COA which will be resolved either pursuant to the arbitration provision in the COA by the Chambre Arbitrale Maritime de Paris ("CAMP") or by a settlement agreement between the Parties.

WHEREAS, Front Carriers, to secure its claims, has attached the amount of $15,101,338.00 which amount is currently being held, pursuant to the order of U.S. District Judge Richard J. Sullivan, in various banks ("Banks").

WHEREAS, by an order dated November 16, 2007, Judge Sullivan ordered Front Carriers to post "a bond or other satisfactory security" in the amount of $5,210,280.00.

WHEREAS, the Parties wish (i) to establish two escrow accounts in a mutually agreed bank, (ii) to deposit the funds that were attached by Front Carriers in one account and the funds that are to be deposited by Front Carriers in the second account and (iii) to distribute all the funds including accrued interest and less any bank charges upon the final conclusion of the arbitration or the signing of a final settlement agreement in accordance with this Escrow Agreement ("Agreement").

NOW THEREFORE, the Parties agree as follows:

1.      The Parties will establish two interest bearing accounts in a mutually agreed bank, with an office in New York, New York, to receive the funds described in this Agreement.

2.      Front Carriers will cause a cease and desist letter to be sent to each of the entities to which attachment notices were served advising each entity that Front Carriers is discontinuing its maritime attachment against Transfield and Transfield ER Ltd. and requesting it to remove Transfield and Transfield ER Ltd. from its electronic screens or filters. At the same time, the Parties will take such reasonable steps as are necessary or advisable to cause the Banks to release the funds that were attached by Front Carriers for deposit directly into one of the escrow accounts. Once so deposited, the funds, including accrued interest and less any bank charges, shall be referred to as the "TF Funds" and the escrow account shall be referred to as the "TF Account."

3.      Upon the establishment of the escrow accounts, Holland & Knight LLP ("Holland & Knight") will deposit the amount of $5,210,280.00 into the other escrow account. Once so deposited, the funds, including accrued interest and less any bank charges, shall be referred to as the "FC Funds" and the escrow account shall be referred to as the "FC Account." The TF Funds and the FC Funds shall be referred to as the "Escrow Funds."

4.      The Escrow Funds are to be distributed upon the happening of the following events:

A.      If the Parties enter into a final settlement agreement, which the Parties agree will provide for the distribution of the Escrow Funds, the Escrow Funds will be distributed as set forth in the settlement agreement.

2

B.    If CAMP issues a final arbitration award and, after all appeals or, if no appeals are taken, after the time(s) to appeal have elapsed, the Escrow Funds will be distributed as follows:

(i)    If there is an award of a monetary amount to Transfield (which amount may include interest and costs, including attorneys' fees), the amount of such award up to the amount of the FC Funds then in the FC Account shall be distributed to Transfield with the remainder distributed to Front Carriers. If there is no monetary award to Transfield, the FC Funds shall be distributed to Front Carriers.

(ii)    If there is an award of a monetary amount to Front Carriers (which amount may include interest and costs including attorneys' fees), the amount of such award up to the amount of the TF Funds then in the TF Account shall be distributed to Transfield with the remainder distributed to Transfield.  If there is no monetary award to Front Carriers, the TF Funds shall be distributed to Transfield.

C.    The distribution of the TF Funds and the FC Funds, unless otherwise ordered by a court, is to be accomplished only by two signatures, one of a member of Lennon, Murphy & Lennon LLC (or its successor firm) on behalf of Transfield and the other of a member of Holland & Knight LLP (or its successor firm) on behalf of Front Carriers.

5.    Transfield acknowledges and accepts that the execution of this Agreement and the deposit of $5,210,280 into escrow by Front Carriers complies with the order of Judge Richard J. Sullivan dated November 16, 2007 and, in particular, is deemed as "satisfactory security" as that term is used in that order.

6.    Lennon, Murphy & Lennon LLC and Holland & Knight LLP each are acting as an agent for its client in this matter and can be held responsible or liable for any losses arising out of or relating to this Agreement only if the loss arises solely out of its gross negligence or willful misconduct.

3

7.      This Agreement is to be governed by and construed in accordance with law of the State of New York.  Any dispute of any kind whatsoever arising out of or relating to this Agreement shall be referred to the United States District Court for the Southern District of New York, to which the Parties agree to submit and to waive any defense of personal jurisdiction and venue.  Service upon Lennon, Murphy & Lennon LLC (or its successor firm) shall constitute proper service of process on Transfield.  Service upon Holland & Knight LLP (or its successor firm) shall constitute proper service on Front Carriers.

8.      This Agreement, in no way, shall prejudice the rights of either Party to seek any remedy that is available to it under the Supplemental Rules for Certain Admiralty and Maritime Claims.

Dated:  December 28, 2007

Front Carriers Ltd.

By _____
        William J. Honan
        Holland & Knight LLP
        Attorneys for Front Carriers Ltd.

Transfield ER Cape Ltd.

By _____
        Patrick F. Lennon
        Lennon, Murphy & Lennon, LLC
        Attorneys for Transfield ER Cape Ltd.

# 4967169_v6

4

# EXHIBIT 12

# ESCROW AGREEMENT
## (Basic Three Party Escrow)

THIS ESCROW AGREEMENT (as the same may be amended or modified from time to time pursuant hereto, this "Escrow Agreement") is made and entered into as of January 23, 2008, by and among Front Carriers Ltd., a Liberian corporation ("Party A"), Transfield ER Cape Ltd., a British Virgin Island corporation ("Party B", and together with Party A, sometimes referred to individually as "Party" or collectively as the "Parties"), and JPMorgan Chase Bank, National Association (the "Escrow Agent").

**WHEREAS**, the Parties have agreed to deposit in escrow certain funds and wish such deposits to be subject to the terms and conditions set forth herein.

**NOW THEREFORE**, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

1.     **Appointment.** The Parties hereby appoint the Escrow Agent as their escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein.

2.     **Funds.** Party A agrees to deposit with the Escrow Agent the sum of $5,210,280. Party B agrees to deposit with the Escrow Agent the sum of $15,101,338 (together those deposits will be referred to as the "Escrow Deposits"). The Escrow Agent shall hold the Escrow Deposits in separate accounts with interest, as earned, posted to each account and, subject to the terms and conditions hereof, shall invest and reinvest the Escrow Deposits and the proceeds thereof (the "Funds") as directed in Section 3.

3.     **Investment of Funds.** (a) During the term of this Escrow Agreement, the Funds shall be invested in a JPMorgan Chase Bank, N.A. money market deposit account ("MMDA") or a successor or similar investment offered by the Escrow Agent, unless otherwise instructed in writing by the Parties and as shall be acceptable to the Escrow Agent. The Escrow Agent will provide compensation on balances in the Funds at a rate determined by the Escrow Agent from time to time. Written investment instructions, if any, shall specify the type and identity of the investments to be purchased and/or sold. The Escrow Agent is hereby authorized to execute purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity. The Escrow Agent or any of its affiliates may receive compensation with respect to any investment directed hereunder including without limitation charging an agency fee in connection with each transaction. The Parties recognize and agree that the Escrow Agent will not provide supervision, recommendations or advice relating to either the investment of moneys held in the Funds or the purchase, sale, retention or other disposition of any investment described herein. The Escrow Agent shall not have any liability for any loss sustained as a result of any investment in an investment made pursuant to the terms of this Escrow Agreement or as a result of any liquidation of any investment prior to its maturity or for the failure of the Parties to give the Escrow Agent instructions to invest or reinvest the Escrow Funds. The Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Escrow Agreement.

(b) Receipt, investment and reinvestment of the Escrow Deposits shall be confirmed by Escrow Agent as soon as practicable by account statement, and any discrepancies in any such account statement shall be noted by Parties to Escrow Agent within thirty (30) calendar days after receipt thereof. Failure to inform Escrow Agent in writing of any discrepancies in any such account statement within said thirty (30) day period shall conclusively be deemed confirmation of such account statement in its entirety.

4.     **Disposition and Termination.** The Funds are to be allocated and distributed in accordance with directions contained in joint written instructions signed by a member of the firm of Holland & Knight LLP listed as an authorized signatory on Schedule 1, on behalf of Party A, and by a member of the firm of Lennon, Murphy & Lennon, LLC, listed as an authorized signatory on Schedule 1, on behalf of Party B. Upon delivery of the Funds by the Escrow Agent, this Escrow Agreement shall terminate, subject to the provisions of Sections 7 and 8.

5.    **Escrow Agent**.  (a)  The Escrow Agent shall have only those duties as are specifically and expressly provided herein, which shall be deemed purely ministerial in nature, and no other duties shall be implied.  The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of, nor have any requirements to comply with, the terms and conditions of any other agreement, instrument or document between the Parties, in connection herewith, if any, including without limitation the Escrow Agreement between the Parties dated December 28, 2007 (the "Underlying Agreement"), nor shall the Escrow Agent be required to determine if any person or entity has complied with any such agreements, nor shall any additional obligations of the Escrow Agent be inferred from the terms of such agreements, even though reference thereto may be made in this Escrow Agreement.  In the event of any conflict between the terms and provisions of this Escrow Agreement, those of the Underlying Agreement, any schedule or exhibit attached to the Escrow Agreement, or any other agreement among the Parties, the terms and conditions of this Escrow Agreement shall control.  The Escrow Agent may rely upon and shall not be liable for acting or refraining from acting upon any written notice, document, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper Party or Parties without inquiry and without requiring substantiating evidence of any kind.  The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, notice, instruction or request.  The Escrow Agent shall have no duty to solicit any payments which may be due it or the Funds, including, without limitation, the Escrow Deposits nor shall the Escrow Agent have any duty or obligation to confirm or verify the accuracy or correctness of any amounts deposited with it hereunder.  The Escrow Agent shall have no duty or obligation to make any calculations of any kind hereunder.

(b)  The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it except to the extent that a final adjudication of a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of any loss to either Party.  The Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through agents or attorneys, and shall be liable only for its gross negligence or willful misconduct (as finally adjudicated in a court of competent jurisdiction) in the selection of any such agent or attorney.  The Escrow Agent may consult with counsel, accountants and other skilled persons to be selected and retained by it.  The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it in accordance with, or in reliance upon, the advice or opinion of any such counsel, accountants or other skilled persons.  In the event that the Escrow Agent shall be uncertain or believe there is some ambiguity as to its duties or rights hereunder or shall receive instructions, claims or demands from any party hereto which, in its opinion, conflict with any of the provisions of this Escrow Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be given a direction in writing by the Parties which eliminates such ambiguity or uncertainty to the satisfaction of Escrow Agent or by a final and non-appealable order or judgment of a court of competent jurisdiction.  The Parties agree to pursue any redress or recourse in connection with any dispute without making the Escrow Agent a party to the same.  Anything in this Escrow Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, incidental, punitive, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

6.    **Succession**.  (a)  The Escrow Agent may resign and be discharged from its duties or obligations hereunder by giving thirty (30) days advance notice in writing of such resignation to the Parties specifying a date when such resignation shall take effect.  If the Parties have failed to appoint a successor escrow agent prior to the expiration of thirty (30) days following receipt of the notice of resignation, the Escrow Agent may petition any court of competent jurisdiction for the appointment of a successor escrow agent or for other appropriate relief, and any such resulting appointment shall be binding upon all of the parties hereto.  Escrow Agent's sole responsibility after such thirty (30) day notice period expires shall be to hold the Funds (without any obligation to reinvest the same) and to deliver the same to a designated substitute escrow agent, if any, or in accordance with the directions of a final order or judgment of a court of competent jurisdiction, at which time of delivery Escrow Agent's obligations hereunder shall cease and terminate, subject to the provisions of Sections 7 and 8 hereunder.  The Escrow Agent shall have the right to withhold an amount equal to any amount due and owing to the Escrow Agent, plus any costs and expenses the Escrow Agent shall reasonably believe may be incurred by the Escrow Agent in connection with the termination of the Escrow Agreement.

(b)    Any entity into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all the escrow business may be transferred, shall be the Escrow Agent under this Escrow Agreement without further act.

7.    **Compensation and Reimbursement.**  The Parties agree jointly and severally to (a) pay the Escrow Agent upon execution of this Escrow Agreement and from time to time thereafter reasonable compensation for the services to be rendered hereunder, which unless otherwise agreed in writing shall be as described in Schedule 2 attached hereto, and (b) pay or reimburse the Escrow Agent upon request for all expenses, disbursements and advances, including, without limitation reasonable attorney's fees and expenses, incurred or made by it in connection with the preparation, negotiation, execution, performance, delivery, modification and termination of this Escrow Agreement. The Parties hereby grant the Escrow Agent a lien on, right of set-off against and security interest in, the Funds for the payment of any claim for compensation, expenses and amounts due hereunder.  In furtherance of the foregoing, the Escrow Agent is expressly authorized and directed, but shall not be obligated, to charge against and withdraw from the Funds for its own account any amounts due to the Escrow Agent under this Section 7.  The obligations contained in this Section 7 shall survive the termination of this Escrow Agreement and the resignation, replacement or removal of the Escrow Agent.

8.    **Indemnity.**  The Parties shall jointly and severally indemnify, defend and save harmless the Escrow Agent and its affiliates and their respective successors, assigns, directors, officers, managers, attorneys, accountants, experts, agents and employees (the "indemnitees") from and against any and all losses, damages, claims, liabilities, penalties, judgments, settlements, actions, suits, proceedings, litigation, investigations, costs or expenses (including, without limitation, the fees and expenses of in house or outside counsel and experts and their staffs and all expense of document location, duplication and shipment) (collectively "Losses") arising out of or in connection with (a) the Escrow Agent's execution and performance of this Escrow Agreement, tax reporting or withholding, the enforcement of any rights or remedies under or in connection with this Escrow Agreement, or as may arise by reason of any act, omission or error of the indemnitee, except in the case of any indemnitee to the extent that such Losses are finally adjudicated by a court of competent jurisdiction to have been primarily caused by the gross negligence or willful misconduct of such indemnitee, or (b) its following any instructions or other directions, whether joint or singular, from the Parties, except to the extent that its following any such instruction or direction is expressly forbidden by the terms hereof.  The Parties hereto acknowledge that the foregoing indemnities shall survive the resignation, replacement or removal of the Escrow Agent or the termination of this Escrow Agreement. The Parties hereby grant the Escrow Agent a lien on, right of set-off against and security interest in, the Funds for the payment of any claim for indemnification, expenses and amounts due hereunder.  In furtherance of the foregoing, the Escrow Agent is expressly authorized and directed, but shall not be obligated, to charge against and withdraw from the Funds for its own account or for the account of an indemnitee any amounts due to the Escrow Agent or to an indemnitee under this Section 8.  The obligations contained in this Section 8 shall survive the termination of this Escrow Agreement and the resignation, replacement or removal of the Escrow Agent.

9.    **Patriot Act Disclosure/Taxpayer Identification Numbers/Tax Reporting.**

(a) **Patriot Act Disclosure.**  Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act") requires the Escrow Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it. Accordingly, the Parties acknowledge that Section 326 of the USA PATRIOT Act and the Escrow Agent's identity verification procedures require the Escrow Agent to obtain information which may be used to confirm the Parties identity including without limitation name, address and organizational documents ("identifying information"). The Parties agree to provide the Escrow Agent with and consent to the Escrow Agent obtaining from third parties any such identifying information required as a condition of opening an account with or using any service provided by the Escrow Agent.

**(b) Taxpayer Identification Numbers ("TIN")**

The Parties have provided the Escrow Agent with their respective fully executed Internal Revenue Service ("IRS") Form W-8, or W-9 and/or other required documentation. The Parties each represent that its correct TIN assigned by the IRS, or any other taxing authority, is set forth in the delivered forms, as well as in the Substitute IRS Form W-9 set forth on the signature page of this Agreement.

**(c) Tax Reporting**

All interest or other income earned under the Escrow Agreement shall be allocated to each account and reported, as and to the extent required by law, by the Escrow Agent to the IRS, or any other taxing authority, on IRS Form 1099 or 1042S (or other appropriate form) as income earned from the Escrow Deposits by either Party A or Party B as the case may be whether or not said income has been distributed during such year. Any other tax returns required to be filed will be prepared and filed by Party A and/or Party B with the IRS and any other taxing authority as required by law. The Parties acknowledge and agree that Escrow Agent shall have no responsibility for the preparation and/or filing of any income, franchise or any other tax return with respect to the Funds or any income earned by the Escrow Deposits. The Parties further acknowledge and agree that any taxes payable from the income earned on the investment of any sums held in the Escrow Deposits shall be paid by Party A and Party B. In the absence of written direction from the Parties, all proceeds of the Funds shall be retained in the Funds and reinvested from time to time by the Escrow Agent as provided in this Agreement. Escrow Agent shall withhold any taxes it deems appropriate, including but not limited to required withholding in the absence of proper tax documentation, and shall remit such taxes to the appropriate authorities.

10.    **Notices.** All communications hereunder shall be in writing and shall be deemed to be duly given and received:
(a) upon delivery, if delivered personally, or upon confirmed transmittal, if by facsimile;
(b) on the next Business Day (as hereinafter defined) if sent by overnight courier; or
(c) four (4) Business Days after mailing if mailed by prepaid registered mail, return receipt requested, to the appropriate notice address set forth below or at such other address as any party hereto may have furnished to the other parties in writing by registered mail, return receipt requested.

| | |
|---|---|
| If to Party A | Holland & Knight LLP<br>195 Broadway, New York, NY 10004<br>Attention: William J. Honan<br>Tel No.: 212 513 3300<br>Fax No.: 212 385 9010 |
| If to Party B | Lennon, Murphy & Lennon, LLC<br>420 Lexington Avenue, New York, NY 10170<br>Attention: Patrick F. Lennon<br>Tel No.: 212 490 6050<br>Fax No.: 212 490 6070 |
| If to the Escrow Agent | JP Morgan Chase Bank, N.A.<br>World Wide Securities Services<br>4 New York Plaza, 21st Floor<br>New York, New York 10004<br>Attention: Michael Kuzmicz<br>Fax No.: 212-623-6168 |

Notwithstanding the above, in the case of communications delivered to the Escrow Agent pursuant to (a), (b) and (c) of this Section 10, such communications shall be deemed to have been given on the date received by an officer of the Escrow Agent or any employee of the Escrow Agent who reports directly to any such officer at the above-referenced office. In the event that the Escrow Agent, in its sole discretion, shall determine that an emergency exists, the Escrow Agent may use such other means of communication as the Escrow Agent deems appropriate. "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which the Escrow Agent located at the notice address set forth above is authorized or required by law or executive order to remain closed.

11.    **Security Procedures.**    In the event funds transfer instructions are given (other than in writing at the time of execution of this Escrow Agreement), whether in writing, by facsimile or otherwise, the Escrow Agent is authorized to seek confirmation of such instructions by telephone call-back to the person or persons designated on schedule 1 hereto ("Schedule 1"), and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated. Each funds transfer instruction shall be executed by an authorized signatory, a list of such authorized signatories is set forth on Schedule 1. The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent. If the Escrow Agent is unable to contact any of the authorized representatives identified in Schedule 1, the Escrow Agent is hereby authorized to seek confirmation of such instructions by telephone call-back to any one or more of Party A or Party B's partners ("Partners") the Escrow Agent may select. The Escrow Agent may rely upon the confirmation of anyone purporting to be any such Partner. The Escrow Agent and the beneficiary's bank in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by Party A or Party B to identify (a) the beneficiary, (b) the beneficiary's bank, or (c) an intermediary bank. The Escrow Agent may apply any of the escrowed funds for any payment order it executes using any such identifying number, even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated. The Parties acknowledge that these security procedures are commercially reasonable.

12.    **Compliance with Court Orders.**    In the event that any escrow property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Escrow Agreement, the Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, entity, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

13.    **Miscellaneous.**    The provisions of this Escrow Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by the Escrow Agent and the Parties. Neither this Escrow Agreement nor any right or interest hereunder may be assigned in whole or in part by the Escrow Agent or any Party, except as provided in Section 6, without the prior consent of the Escrow Agent and the other parties. This Escrow Agreement shall be governed by and construed under the laws of the State of New York. Each Party irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consents to service of process by mail or in any other manner permitted by applicable law and consents to the jurisdiction of the courts located in the State of New York. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Escrow Agreement. No party to this Escrow Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control. This Escrow Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the parties to this Escrow Agreement may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party. If any provision of this Escrow Agreement is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not

invalidate or render unenforceable such provisions in any other jurisdiction. A person who is not a party to this Agreement shall have no right to enforce any term of this Agreement. The parties represent, warrant and covenant that each document, notice, instruction or request provided by such Party to Escrow

Agent shall comply with applicable laws and regulations. Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the parties hereto to the fullest extent permitted by law, to the end that this Escrow Agreement shall be enforced as written. Except as expressly provided in Section 8 above, nothing in this Escrow Agreement, whether express or implied, shall be construed to give to any person or entity other than the Escrow Agent and the Parties any legal or equitable right, remedy, interest or claim under or in respect of this Escrow Agreement or any funds escrowed hereunder.

**IN WITNESS WHEREOF**, the parties hereto have executed this Escrow Agreement as of the date set forth above.

Tax Certification: Taxpayer Identification Number (TIN):  Social Security Number          Date: December 2̲0̲ 2007

<br>

*or*

Employee Identification Number

Name & Address:  Front Carriers Ltd.

    c/o Golden Ocean Management A/S

    P.O. Box 2005 Vika, NO-0125 Oslo, Norway

Customer is a (check one):

Corporation  X    Partnership____    Individual/sole proprietor____  Trust____
Limited liability company____ Enter the tax classification (D=disregarded entity, C=Corporation, P=Partnership_____
Other _____

Taxpayer is (check if applicable):

  X   Exempt from backup withholding

*Under the penalties of perjury, the undersigned certifies that:*

(1)  *the number shown above is its correct Taxpayer Identification Number (or it is waiting for a number to be issued to it);*

(2)  *it is not subject to backup withholding because: (a) it is exempt from backup withholding or (b) it has not been notified by the Internal Revenue Service (IRS) that it is subject to backup withholding as a result of failure to report all interest or dividends, or (c) the IRS has notified it that it is no longer subject to backup withholding; and*

(3)  *It is a U.S. citizen or other U.S. person (defined in the Form W-9 instructions).*

*(If the entity is subject to backup withholding, cross out the words after the (2) above.)*

*Investors who do not supply a tax identification number will be subject to backup withholding in accordance with IRS regulations.*

*Note: The IRS does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.*

<br>

**PARTY A**

By:   Front Carriers Ltd.

Name:  William J. Honan

Title:   Attorney-in-Fact

<br>

*369922:v2 Form Basic Three Party Escrow Agreement   7*
*September 2007*

Tax Certification: Taxpayer Identification Number (TIN): Social Security Number        Date: December 2-0 2007

or

**Employee Identification Number**

**Name & Address:**   Transfield ER Cape Ltd.

c/o Transfield ER Ltd.

Room 2538 Sun Hung Kai Center
30 Harbour Road, Wanchai, Hong Kong

Customer is a (check one):

Corporation  X    Partnership___    Individual/sole proprietor____  Trust____
Limited liability company____ Enter the tax classification (D=disregarded entity, C=Corporation, P=Partnership_____
Other _____

Taxpayer is (check if applicable):

 X   Exempt from backup withholding

*Under the penalties of perjury, the undersigned certifies that:*

(1)   *the number shown above is its correct Taxpayer Identification Number (or it is waiting for a number to be issued to it);*

(2)   *it is not subject to backup withholding because (a) it is exempt from backup withholding or (b) it has not been notified by the Internal Revenue Service (IRS) that it is subject to backup withholding as a result of failure to report all interest or dividends, or (c) the IRS has notified it that it is no longer subject to backup withholding; and*

(3)   *it is a U.S. citizen or other U.S. person (defined in the Form W-9 instructions).*

*(If the entity is subject to backup withholding, cross out the words after the (2) above.)*

*Investors who do not supply a tax identification number will be subject to backup withholding in accordance with IRS regulations.*

*Note: The IRS does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.*

---

PARTY **B**

By:   Transfield ER Cape Ltd.

Name:   Patrick F. Lennon

Title:   Attorney-in-Fact

*369922:v2 Form Basic Three Party Escrow Agreement   8*
*September 2007*

**SCHEDULE 1**

**Telephone Number(s) and authorized signature(s) for**
**Person(s) Designated to give Funds Transfer Instructions**

If to Party A:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | William J. Honan | 212 513 3300 | |
| 2. | | | |
| 3. | | | |

If to Party B:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | Patrick F. Lennon | 212 490 6050 | |
| 2. | | | |
| 3. | | | |

**Telephone Number(s) for Call-Backs and**
**Person(s) Designated to Confirm Funds Transfer Instructions**

If to Party A:

| | Name | Telephone Number |
|---|---|---|
| 1. | Michael J. Frevola | 212 513 3516 |
| 2. | | |
| 3. | | |

If to Party B:

| | Name | Telephone Number |
|---|---|---|
| 1. | Charles E. Murphy | 212 490 6050 |
| 2. | | |
| 3. | | |

Telephone call backs shall be made to both Parties if joint instructions are required pursuant to the agreement. All funds transfer instructions must include the signature of the person(s) authorizing said funds transfer and must not be the same person confirming said transfer.

369922:v2 Form Basic Three Party Escrow Agreement    9
September 2007

**SCHEDULE 2**

**Escrow Agent's Compensation:**

The compensation for the Escrow Agent will be $2,500 per year without proration for partial years.

# 4979325_v3

JPMORGAN CHASE BANK N.A.

as Escrow Agent

By: _____

Michael J. Kuzmicz
Vice President

# EXHIBIT 13



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DC #: _____
DATE FILED: 11 25 08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COSCO LOGISTICS (DALIAN) CO. LTD.,

                Plaintiff,

-against-

BEITAI IRON & STEEL GROUP IMPORT &
EXPORT CO. LTD.,

                Defendant.

08 Civ. 7988 (DC)

**STIPULATION AND ORDER**

IT IS HEREBY STIPULATED AND AGREED by and between the undersigned counsel for the parties to this action that the sum of $381,311.97 now in the possession of garnishee banks under attachment pursuant to the Court's Order of Maritime Attachment and Garnishment be released and transferred as follows:

1.    $181,572 at Standard Chartered Bank to Plaintiff, COSCO Logistics (Dalian) Co. Ltd. ("Plaintiff"). The remittance details for Plaintiff will be provided by the Plaintiff's attorneys, Blank Rome LLP.

2.    $148,428 at Bank of China to Plaintiff, with the remittance details for Plaintiff to be provided by Plaintiff's attorneys, Blank Rome LLP.

3.    $869.31 at Bank of China to Defendant, Beitai Iron & Steel Group Import & Export Co. Ltd. The remittance details for Defendant will be provided by Defendant's attorneys, Holland & Knight, LLP.

4.    $20,666.67 at Bank of America to Defendant, Beitai Iron & Steel Group Import & Export Co. Ltd. The remittance details for Defendant will be provided by Defendant's attorneys, Holland & Knight, LLP.

5.    $29,775.99 at ABN Amro to Defendant, Beitai Iron & Steel Group Import & Export

Co. Ltd. The remittance details for Defendant will be provided by Defendant's attorneys, Holland & Knight, LLP.

**IT IS FURTHER ORDERED** that this action is discontinued without prejudice and without costs as to either party.

Dated: New York, New York
      November 2, 2008

_____
UNITED STATES DISTRICT JUDGE

ENTRY OF THE FOREGOING ORDER IS CONSENTED TO:

BLANK ROME LLP                          HOLLAND & KNIGHT LLP


By: _____            By: _____
Jack A. Greenbaum (JG0039)]             Francesca Morris
The Chrysler Building                   Harmony Loube
405 Lexington Ave.                      195 Broadway
New York, N.Y. 10174                    New York, New York 10007-3189
(212) 885-5000                          (212) 513-3200
jgreenbaum@blankrome.com                francesca.morris@hklaw.com
                                        harmony.loube@hklaw.com

*Attorneys for Plaintiff*                *Attorneys for Defendant.*


# 5834391_v1

2

# EXHIBIT 14

# JPMorganChase

Cash Reporting -- Transaction Detail Report    **REDACTED**

HNKLLP                                                                    ** Informational Purposes Only **
Created on: 05/14/2009; 12:37 PM

| | | | |
|---|---|---|---|
| Account Number: | | Bank Number: | |
| Account Name: | HOLLANAD AND KNIGHT | Bank Name: | JPMORGAN CHASE NEW YORK |
| Currency Type: | USD | | |

| | | | |
|---|---|---|---|
| Transaction Date: | 05/13/2009 | Description: | FED WIRE CREDIT |
| Value Date: | 05/13/2009 | Product Group: | FED |
| Amount: | 20,666.67 | Your Reference: | O/B BK AMER NYC |
| 0 Day: | 20,667. | Bank Reference: | |
| 1 Day: | 0. | | |
| 2+ Day: | 0. | | |

Text:

| | |
|---|---|
| YOUR REF | O/B BK AMER NYC |
| REC FROM | BANK OF AMERICA N.A. 100 WEST 33RD STREET NEW YORK NY 10001 |
| FED ID | |
| B/O CUSTOMER | BEITAI IRON AND STEEL GROUP IMPORT AND EXPORT CO LTD ADD NO 315 ZHONGSHAN RD SHAEKOU DIST DALIAN CHINA |
| B/O BANK | MARITIME ORDER OF ATTACHMENT ACCT 100 WEST 33RD STREET NEW YORK, NY |
| REMARK | 10001 |
| FED TIME | REF NUM 119092-00002 /BNF/OK TO RELEASE MARITIME ORDER OF ATTACHMENT DEFENDANT |
| REC GFP | BEITAI IRO N & SETTL GROUP IMPORT & EXPORT C O LTD |
| MRN SEQ | |
| FED REF | |

**VIA FED**

# EXHIBIT 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
TRANSFIELD ER CAPE LTD.,                    :
                                            :
                        Plaintiff(s),       :    08 Civ. 8602 (VM)
                                            :
        - against -                         :    **ORDER TO SHOW CAUSE**
                                            :
CROWNLAND INTERNATIONAL CO. LTD.,           :
                                            :
                        Defendant(s).       :
------------------------------------ X

**VICTOR MARRERO, United States District Judge.**

In light of the decision by the United States Court of Appeals for the Second Circuit in <u>The Shipping Corporation of India Ltd. v. Jaldhi Overseas Pte Ltd.</u>, Docket Nos. 08-3477-cv and 08-3758-cv (October 16, 2009), it is hereby

**ORDERED** that plaintiff in this action show cause why this Court's order ("the Attachment Order") authorizing the issuance of a writ of maritime attachment and garnishment, and appointing process server pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, should not be vacated; and it is further

**ORDERED** that plaintiff show cause why any assets attached as electronic fund transfers pursuant to the Attachment Order should not be immediately released; and it is finally

**ORDERED** that any response to this Order shall be made by letter brief not to exceed three (3) pages filed with the Court and served on defendant not later than seven days from the date of this

Order.  In the event no timely response to this Order is submitted,
the Court may dismiss this action without further notice to the
parties.

**SO ORDERED.**

Dated:    New York, New York
          21 October 2009

                                            Victor Marrero
                                              U.S.D.J.

# EXHIBIT 16



Lennon,
Murphy &
Lennon, LLC
ATTORNEYS AT LAW

The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
phone (212) 490-6050
fax (212) 490-6070
www.lenmur.com

Tide Mill Landing
2425 Post Rd, Suite 302
Southport, CT 06890
phone (203) 256-8600
fax (203) 256-8615
mail@lenmur.com

October 28, 2009



USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10-28-09

*Via Facsimile: (212) 805-6382*
Hon. Victor Marrero
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 660
New York, NY 10007

Re:    **Transfield ER Cape LTd. v. Crownland International CO. Ltd.**
       Docket Number: 08 Civ.8602
       Our File Number: 1619-08

Dear Judge Marrero,

Our firm represents the Plaintiff, Transfield ER Cape Ltd., in the above-referenced action. We write with respect to the Order to Show Cause dated October 21, issued by your Honor which directed Plaintiff to submit a response within seven days from the date of the Order. Specifically, we write to request that we be allowed a short extension of time (21 days) to respond to the Order to Show Cause. We are preparing a response to be submitted on behalf of Plaintiff, however, we are still waiting for Plaintiff, who is overseas, to finalize and execute the declaration to be submitted in support of its argument to maintain the security in New York. We attempted to contact Mr. Armand Pare, who submitted a letter on behalf of Defendant Crownland in this action, to request his consent, however, he was unavailable.

In light of the foregoing, and the gravity of the Order to Show Cause, we respectfully request that your Honor grant Plaintiff's request for an extension.

In addition, we would like to clarify the record as to the location of the security in this matter. In an earlier letter, the undersigned indicated that the funds remained in the hands of the garnishee banks. However, this is incorrect. Specifically, it has been revealed that while the undersigned was on maternity leave this summer, counsel for Defendant Crownland International Co. Ltd. and counsel for Pioneer Freight Futures Co. Ltd. (another creditor with a Rule B attachment against Crownland) entered into an agreement with us (as Transfield's counsel) to transfer the security into the court registry. Thus, it is our understanding that the funds originally attached in this matter were sent to the registry of the Court pursuant to an agreement between all three parties.

Kevin J. Lennon of our office, who was approached by counsel for Pioneer Freight Futures, can verify the terms of the agreement between the parties if necessary. In any event, pursuant to the agreement, a stipulation and Order providing for the release of funds to the court

registry was submitted to Judge Pauley in the action Pioneer Freight Futures Co. Ltd. v. Crownland International Co. Ltd. (09 Civ. 659). Please find attached hereto as Exhibit "1" a copy of the Stipulation and Order executed by counsel for Crownland and Pioneer (and consented to by Transfield ER Cape Ltd.) Judge Pauley duly executed the proposed Order and it was served on the garnishee bank holding Crownland's funds.

Should your Honor have any questions or comments we are available to discuss the same at the convenience of the Court.

Respectfully submitted,

Nancy R. Siegel

cc:   *Via Facsimile (212) 952-0345*
      Armand M. Pare

> In light of the circumstances described above regarding payment of the garnished funds into the Registry of the Court, no further response to the Court's Order to Show Cause shall be necessary.
>
> SO ORDERED:
> 10-18-09
> DATE        VICTOR MARRERO, U.S.D.J.

# EXHIBIT 17

**JPMorganChase** ⬣

JPMORGAN CHASE BANK, N.A.
NORTHEAST MARKET
P O BOX 260180
BATON ROUGE  LA  70826-0180

# REDACTED

October 01, 2009 -
October 30, 2009

**Page 1 of 1**

**Account Number**



00011318 CEN 802 3J 30409 - NNN T 1  000000000  C1 0000

FRONT CARRIERS LTD
JPM \AS E/A FOR FRONT CARRIERS/
TRANSFIELD ESCROW ACCT 2
ATTN WILLIAM J HONAN/FRONT CARRIERS LTD
C/O HOLLAND & KNIGHT LLP
195 BROADWAY
NEW YORK NY 10007-3100

**Customer Service**

If you have any questions
about your statement, please
contact your Customer Service
Professional.

## Cash Compensation Account

## Summary

|  | Number | Amount |
|---|---|---|
| Opening Ledger Balance | | $15,347,954.60 |
| Deposits and Credits | 1 | $630.60 |
| Withdrawals and Debits | 0 | $.00 |
| Checks Paid | 0 | $.00 |
| **Ending Ledger Balance** | | **$15,348,585.20** |

## Deposits and Credits

| Ledger Date | Description | Amount |
|---|---|---|
| 10/01 | COMPENSATION ON PRIOR MONTH AVAILABLE BALANCE IN TRUST ACCOUNT WITH JPMORGAN CHASE BANK, N.A. TRN: YOUR REF: | $630.60 |
| **Total** | | **$630.60** |

## Daily Balance

| Date | Ledger Balance | Date | Ledger Balance |
|---|---|---|---|
| 10/01 | $15,348,585.20 | | |

Your service charges, fees and earnings credit have been calculated through account analysis.

Please examine this statement of account at once.  By continuing to use the account, you agree that: (1) the account is subject to the Bank's deposit account agreement, and (2) the Bank has no responsibility for any error in or improper charge to the account (including any unauthorized or altered check) unless you notify us in writing of this error or charge within sixty days of the mailing or availability of the first statement on which the error or charge appears.

**JPMorganChase** ⬣

JPMORGAN CHASE BANK, N.A.
NORTHEAST MARKET
P O BOX 260180
BATON ROUGE  LA  70826-0180

**REDACTED**

October 01, 2009 -
October 30, 2009

**Page 1 of 1**

**Account Number**



⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊
00011302 CEN 802 3J 30409 - NNN T 1  000000000  C1 0000

FRONT CARRIERS LTD
JPM AS E/A FOR FRONT CARRIERS/
TRANSFIELD ESCROW ACCT
ATTN WILLIAM J HONAN  FRONT CARRIERS LTD
C O HOLLAND & KNIGHT LLP
195 BROADWAY
NEW YORK NY 10007-3100

**Customer Service**

If you have any questions
about your statement, please
contact your Customer Service
Professional.

## Cash Compensation Account

## Summary

| | Number | Amount |
|---|---|---|
| Opening Ledger Balance | | $5,311,697.50 |
| Deposits and Credits | 1 | $218.40 |
| Withdrawals and Debits | 0 | $.00 |
| Checks Paid | 0 | $.00 |
| **Ending Ledger Balance** | | **$5,311,915.90** |

## Deposits and Credits

| Ledger Date | Description | Amount |
|---|---|---|
| 10/01 | COMPENSATION ON PRIOR MONTH AVAILABLE BALANCE IN TRUST ACCOUNT WITH JPMORGAN CHASE BANK, N.A. TRN: YOUR REF: | $218.40 |
| **Total** | | **$218.40** |

## Daily Balance

| Date | Ledger Balance | Date | Ledger Balance |
|---|---|---|---|
| 10/01 | $5,311,915.90 | | |

Your service charges, fees and earnings credit have been calculated through account analysis.

Please examine this statement of account at once.  By continuing to use the account, you agree that: (1) the account is subject to the Bank's deposit account agreement, and (2) the Bank has no responsibility for any error in or improper charge to the account (including any unauthorized or altered check) unless you notify us in writing of this error or charge within sixty days of the mailing or availability of the first statement on which the error or charge appears.

# EXHIBIT 18

12/2008


*Federal Home Loan Bank of New York*

ID: HLB-108

# WIRE TRANSFER AGREEMENT

This Wire Transfer Agreement ("Agreement"), the Global Authorization Forms and the Correspondent Services Manual of the Federal Home Loan Bank of New York ("Bank") establish the procedures to be used by the Bank and the Customer when executing wire transfers. All terms not defined herein shall have the meanings given to them in Article 4A of the Uniform Commercial Code ("Article 4A") as in effect in New York.

## I.  When the Customer is Requesting a Wire Transfer

1.  **Description of Wire Transfer Agreement:** The Services will enable the Customer to give wire transfer instructions to the Bank instructing it to transfer funds by wire from the account(s) designated in the Wire Transfer Services Set-up Forms (the "Account") to Beneficiaries. Prior to commencement of wire transfer services, the Customer will complete and execute this Agreement. The Bank will not accept outgoing wire transfer requests without a completed and executed Agreement on file. If an amended Agreement is sent to the Customer, the Customer shall have thirty calendar days to re-execute the amended Agreement and return it to the Bank. After thirty calendar days have elapsed, the Bank shall have no further obligation to accept wire transfers for the Customer.

2.  **Security Procedures:** The Bank will provide the Customer with a Test Key Algorithm Value Table and a Fixed Number specific to the Customer for use in calculating a Test Code for each wire request. The Bank will also assign a PIN to each Authorized Individual. The Customer shall not allow Authorized Individuals with a PIN to have access to the Test Code calculation. It is the Customer's responsibility to ensure that the confidentiality of PINs and Test Codes is maintained and to inform the Bank immediately of any changes to Authorized Individuals' authorities. Authorized Individuals must provide the Test Code and PIN when initiating a wire transfer. If the Authorized Individual cannot provide a valid Test Code and PIN, the Bank will not accept the wire transfer. When a wire transfer accompanied by the Test Code and PIN are received, the Bank will call a second Authorized Individual to verify the authenticity and accuracy of the Customer's Payment Order request. If the Authorized Individual receiving the callback is unavailable or unable to verify the request, the Bank will not accept the wire transfer request. If a request for a wire transfer is transmitted through 1Link$^{sm}$, the Correspondent Services Agreement, as amended, and the Correspondent Services Manual will govern such wire transfer. Information concerning the security requirements surrounding the use of 1Link for wire transfers can be found in section 5.0 of the Correspondent Services Manual. The Customer agrees that the Security Procedures it selected are commercially reasonable and are the Security Procedures that best meet its requirements given the size, type and frequency of the wire transfer the Customer will issue to the Bank. The Customer understands and agrees that the security procedures established hereunder are solely intended to determine whether any wire transfer instruction received by the Bank was sent by an authorized person, and not to detect errors in amount. Customer irrevocably authorizes the Bank to act in accordance with, and rely on, any instructions or other communication received by it from the Customer pursuant to this Agreement, whether or not authorized, when verified in accordance with the security procedures established hereunder. The Customer shall be responsible for safeguarding the confidentiality of all user IDs, codes, passwords and other similar devices associated with the Services and to distribute them only to its authorized personnel or agents. The Customer shall notify the Bank immediately if it learns that the security procedures have been breached or that any unauthorized person has been given access or been able to gain access to IDs, codes, passwords, and the like. Customer agrees to indemnify the Bank for failure to safeguard the security procedures or to notify the Bank of a breach thereof.

3.  **Cut-Off Times:** Domestic Wire Transfer requests (including those processed on 1Link) must be received by the Bank's Funds Transfer Department no later than 4:00 p.m. Eastern Time. International Wire Transfer requests must be received by the Bank no later than 3:00 p.m. Eastern Time (on 1Link the cut-off time is 4:00 p.m. Eastern Time). The Bank may execute a wire transfer received after the 4:00 p.m. deadline on the same day the Bank receives the request, but it shall have no legal obligation to do so. Any wire transfer requests received by the Bank after the 4:00 p.m. deadline which are not executed by the Bank on the same day must be requested by the customer to be executed on the following Business Day. The Bank may amend the stated cutoff times upon 10 Business Days prior written notice to the Customer to correspond to

changes in the stated deadlines for the Federal Reserve Communications System ("Fedwire"), the Clearing House Interbank Payment System ("CHIPS"), Society for Worldwide International Financial Telecommunications ("S.W.I.F.T.") or any other funds transfer system employed hereunder.

4. **Amendments and/or Cancellations:** When the Customer wishes to either amend or cancel a wire transfer, whether repetitive or non-repetitive, the Customer shall notify the Bank immediately via telephone. All Customer amendments or cancellations will be subject to the same identification procedures used when initiating a wire transfer request. If the amendment or cancellation request is received by the Bank prior to acceptance of the Customer's Payment Order, the Bank will make a reasonable attempt to act on the Customer's wire transfer request upon verification of the caller's authority. In the event the Customer's amendment or cancellation request is received after execution of the Customer's wire transfer, the Bank will use reasonable efforts to initiate a wire transfer Service Message requesting an amendment or a wire reversal as instructed by the Customer. The Wire Transfer Service Message is an administrative wire that will be executed by the Bank in accordance with existing Federal Reserve System rules and regulations. The Bank's execution of a Wire Transfer Service Message does not constitute the Bank's acceptance of the Customer's amendment or cancellation request. Under no circumstances will the Bank be liable to the Customer for amendments or cancellations received by the Bank after execution of the Customer's wire transfer. The Customer agrees to reimburse the Bank for any costs, losses or damages, including reasonable attorney's fees, the Bank incurs in connection with the Customer's amendment or cancellation request.

5. **Notice of Rejection:** In the event the Bank rejects an outgoing wire transfer request, the Bank shall provide notice of such rejection to the Customer by telephonically or electronically notifying an Authorized Individual. In the event the Bank is unable to so notify the Customer, the Bank shall attempt to notify the Customer within a reasonable time via the most practicable methods available at such time. Nothing in this Agreement shall be interpreted as obligating the Bank to accept any payment order, or to take any action with respect thereto, except as expressly provided in Article 4A or this Agreement.

6. **Name and Number of Receiving Bank or Beneficiary:** If a wire transfer describes the person to receive payment inconsistently by name and account number, payment may be made on the basis of the account number even if the account number identifies a person different from the named person. If a wire transfer describes a financial institution inconsistently by name and identification number, the identification number alone may be relied upon as the proper identification of the financial institution. In any instance in which the Bank may be considered the Originator of a wire transfer, because it is making payment of a letter of credit issued by it, or otherwise, the account party or other person requesting that the Bank make payment on the basis of payment instructions provided by the Beneficiary shall indemnify the Bank for any losses and expenses (including court costs and reasonable attorneys' fees) arising from the Bank's reliance on such information.

7. **Overdrafts:** For each wire transfer executed by Bank in accordance with the terms of this Agreement, the Customer authorizes the Bank to debit or credit, as applicable, the account specified in the Transfer Instruction. The Bank shall have no obligation to accept a request for a wire transfer if such acceptance would create an overdraft in such Account. Should it elect to so: (1) such election will not obligate it to do so in any future instance; and (2) interest may be charged from the date such overdraft was created until the date of repayment *in accordance with the formula for "Overdrawn Accounts" set forth on the Bank's Credit Service Fee schedule, Form HLB-202, as amended from time to time, and which may be found on the Bank's website www.fhlbny.com.*

8. **OFAC:** Customer acknowledges that the Bank is not permitted to transfer funds in violation of federal law or regulations. Customer hereby warrants that it will maintain its own filter to test each Originator and Beneficiary of a requested Payment Order against the list of prohibited names maintained by the Office of Foreign Assets Control ("OFAC"), and further warrants that it will not request any wire transfer which, if accepted by the Bank, will cause the Bank to be in violation of any rule, regulation, or order of such Agency or subject the Bank to any sanction imposed by such Agency. All penalties imposed by OFAC to the Bank for any violation will be passed on to the customer. Customer agrees that it will indemnify, defend and hold harmless against any loss or cost arising from the Customer's failure to screen its funds transfers.

**II. When the Customer Is the Beneficiary of a Payment Order**

1.  **Notice of Wire Receipt:** If the incoming wire transfer instructs payment to the Customer's account, notice of incoming funds to the Customer will be deemed to have occurred when the Bank makes available the Customer's Daily Advice of Account Activity, Daily Wire Transfer Statement or when notification is made available on 1Link.   If the Customer subscribes to the Bank's information reporting service ("Balance Reporting Service"), notice of incoming funds will be deemed to have occurred at the time such item appears on the Balance Reporting Service.

**III. General Provisions**

1.  **Rights and Obligations:** All wire transfers processed by the Bank on the Customer's behalf shall be subject to and governed by this Agreement and the Bank's Correspondent Services Manual, as each may be amended from time to time.  It is understood and agreed that unless otherwise specifically provided herein, and to the extent permitted by applicable law, the parties will be bound by the rules of any funds transfer system utilized to effect such funds transfer.

2.  **Account Statements:** The Bank will make available electronically to the Customer a Daily Wire Transfer Statement and a monthly Overnight Investment Account Statement.  Additionally, the Customer can subscribe to the Balance Reporting Service and/or elect to receive the Daily Advice of Account Activity and Daily Wire Transfer Statement electronically via the 1Link System.  The Customer will exercise ordinary care to determine whether a wire transfer accepted by Bank was either erroneous or not authorized.  In the event of an account discrepancy, the Customer will notify the Bank within three (3) days of receipt of the Wire Transfer Statement, the Daily Advice of Account Activity, or the Balance Reporting Service, if the discrepancy is reflected in any of the foregoing, and within fifteen (15) days of receipt of the monthly Demand and Deposit Account Statement if the discrepancy is reflected only in the monthly Overnight Investment Account Statement.  *If notice of the discrepancy is made to the Bank via telephone the customer must follow up with notice of the discrepancy to the Bank in writing via e-mail or letter within 48 hours of telephone notification.* Because failure of the Customer to detect an erroneous or unauthorized wire transfer may make it difficult or impossible for the Bank to recover the funds from a third party, and may also facilitate the commission of further errors or the execution of further unauthorized transfers, the Bank may, in its sole discretion, terminate the Customer's right to request wire transfers in the event that a report is received outside of the foregoing time periods.

3.  **Interest Rate:** In the event the Bank must refund or re-credit the Customer's account as required under applicable law, and is required to pay interest to the Customer, interest will be paid *at the prevailing Overnight Investment Account (OIA) rate,* based on established balance tiers as set forth in the Correspondent Services Manual, on collected balances in the Customers' Overnight Investment Accounts.

4.  **Customer Provided Information:** Any changes to information provided by the Customer to the Bank shall be effective only at such time as the Bank has had a reasonable opportunity to act after receipt of written notice from the Customer.  The Customer will notify the Bank in writing of changes in the list of Authorized Persons.  The Bank shall have no liability for losses caused by the Customer's failure to provide such notification. The Bank will be fully protected in relying on the Customer's notices.

5.  **Custodial Mortgage Accounts ("CMA"):** The Customer must execute a separate Agreement for its Demand Account(s) and each of its Custodial Mortgage Accounts.  Each such Agreement shall identify all Authorized Individuals authorized to access the account for which the Agreement is executed.

6.  **Telephone Recording:** Notice is hereby given that all telephone calls to and from the Bank's Funds Transfer Department are recorded.  Execution of this Agreement constitutes the Customer's consent to such recording.

7.  **Complete Agreement:** This Agreement must be executed in its entirety, without alteration or addition.  This Agreement contains the final, complete and exclusive understanding of, and supersedes all prior or contemporaneous, oral or written, agreements, understandings, representations and negotiations between, the parties relating to the subject matter of this Agreement, and, with respect to funds transfers contemplated hereunder, supersedes any Agreement between the Bank and Customer. Both parties further

*Federal Home Loan Bank of New York*      ID: HLB-108

agree that this Agreement may not in any way be explained or supplemented by a prior or existing course of dealings between the parties, by any usage of trade or custom, or by any prior performance between the parties pursuant to this Agreement or otherwise.  In the event that any provision of this Agreement is determined by a court or tribunal of competent jurisdiction to be illegal or unenforceable for any reason, such provision shall be replaced by a legal and enforceable provision that comes as close as possible to carrying out the intent of the original provision.  This Agreement shall be binding upon and inure to the benefit of the parties' respective successors and assigns.

8.  **Termination:** This Agreement may be terminated by either party upon 30 days prior written notice to the other and may be terminated by the Bank immediately if there is a material breach of any provision of this Agreement.  If a Payment Order is to be processed in accordance with a statute, rule, or regulation of the United States, or any federal agency, the Payment Order will be governed by that statute, rule, or regulation.  Sections I(6), I(8), and IV(14) shall survive termination of this Agreement.

9.  **Bank's Responsibilities:** The Bank may send instructions by wire, telegraph, telephone, cable, or whatever other transmission method the Bank considers to be reasonable.  The Bank will not be liable for any third party's failure to process or delay in processing any instruction.

10. **Governing Law; Jurisdiction:** *All matters relating to* this agreement shall be governed by, and construed and interpreted according to federal law and the internal laws (without reference to conflicts of law rules) of the State of New York.  Any action arising out of or relating to this Agreement shall be litigated in, and only in, courts located in the City and State of New York and the parties hereby submit to the exclusive jurisdiction of such courts and agree that they are a convenient forum.  **EACH PARTY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT.**

11. **Counterparts:** This Agreement may be executed in two or more counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same.

12. **Business Days:** A Business Day shall mean any day on which banks in New York are not required or permitted to be closed.

13. **Limitation of Liability: The Customer understands and agrees that wire transfers are generally effected through automated processes, that the persons conducting such operations do not have knowledge of the Customer's unique circumstances, even though such circumstances may be known to other persons within the Bank, and that it is not the duty of persons possessing such knowledge to communicate it to persons responsible for wire transfer operations. THE CUSTOMER (1) UNDERSTANDS AND AGREES THAT ANY CLAIM AGAINST THE BANK SHALL BE LIMITED TO CLAIMS FOR WHICH A REMEDY IS PROVIDED EITHER BY ARTICLE 4A OF THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN NEW YORK OR BY THIS AGREEMENT; AND (2) WAIVES THE RIGHT TO BRING ANY CLAIM ON ANY OTHER LEGAL THEORY WHATSOEVER, WHETHER IN CONTRACT OR IN TORT IRRESPECTIVE OF WHETHER OR NOT UNDER SUCH THEORY OR THEORIES THE ASSERTED BANK DUTIES OR OBLIGATIONS ARE DEEMED TO BE IN ADDITION TO OR INCONSISTENT WITH THOSE SET FORTH HEREIN OR IN ARTICLE 4A OF THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN NEW YORK. IN NO EVENT WILL THE BANK BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL, INDIRECT OR PUNITIVE DAMAGES, WHETHER OR NOT THE LIKELIHOOD OF SUCH DAMAGES WAS KNOWN TO THE BANK.**

14. **Indemnification:** (a) The Customer agrees to indemnify and hold the Bank and its directors, officers, employees and agents harmless from all claims, demands, losses, liabilities, judgments, and expenses (including court costs and reasonable attorneys' fees) arising out of or in any way connected with performance or interpretation of this Agreement or determination of the rights and duties of the parties hereto

(b) Maritime Attachment and Asset Forfeiture in cases in which the Bank is the intermediary bank in a funds transfer.  Without limiting the generality of the foregoing, this section establishes the rules that apply when the Bank is acting as an intermediary bank on behalf of the Customer, and a party seeks to attach

funds in the possession of the Bank or the United States Government seeks to seize such funds or to prohibit payment to the intended beneficiary:

(1) The Customer shall indemnify the Bank for the amount of such attachment or seizure in any instance in which the Bank has determined that the rules of Article 4A do not enable it to receive or retain any payment made for such wire transfer. Interest as calculated according to section III(3) above shall be due from the effective date of the attachment or seizure to the date of payment. The Bank shall be authorized to debit any account of the Customer for any amounts due hereunder.

(2) The Bank may, at its election, seek to vacate the order of attachment or seizure. Should it elect to do so, it may employ counsel of its choice (subject to the right of the Customer to object for reasonable cause). The Bank will direct the course of such litigation, in consultation with the Customer, provided that: (a) the Customer may direct the Bank to discontinue the suit at any time; and (b) the Customer may direct the Bank to accept or reject any settlement offer received. The Customer shall indemnify the Bank for the actual costs of such litigation, including counsel fees, out of pocket expenses, and court costs.

(3) If the Bank elects not to seek to vacate the order of attachment or seizure, the Customer may do so at its own expense. The Bank will assign the claim to the Customer and cooperate with it in the prosecution of such action as may be reasonably requested by the Customer.

(4) Should the order of attachment or seizure be vacated, and upon the expiration of any time permitted for appeal and final judgment has been entered, the Bank will return any funds received from the Customer, with interest as calculated in accordance with section III(3) above. Should there be a settlement offer accepted by the Customer, the Bank will make a partial refund, with interest as calculated in accordance with section III(3) above.

15  **Force Majeure:** Except as otherwise provided by Article 4A, the Bank will not be liable for its inability to perform its obligations under this Agreement when such inability arises out of causes beyond its control, including, without limitation, any act of God, accident, equipment failure, system failure, act of war or terrorism, labor dispute, or the failure or inability of any third party to provide any electronic or telecommunication service, provided that the Bank shall have exercised such diligence as the circumstances require.


**ACCEPTED AND AGREED:**

_____

Customer Name


By: _____


Name: _____

Title: _____

Date: _____


*Federal Home Loan Bank of New York*    ID: HLB-108